**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Miguel Avila, et al.,

Plaintiffs,

v.

LifeLock Incorporated, et al.,

Defendants.

No. CV-15-01398-PHX-SRB

**ORDER**

The Court now considers Defendants' Motion to Dismiss Amended Class Action Complaint ("MTD") (Doc. 56).[1] The Court heard oral argument on this Motion on May 2, 2016. (Doc. 71, Minute Entry.)

## I. BACKGROUND

This is a securities fraud class action brought on behalf of purchasers of Defendant LifeLock Incorporated ("LifeLock") common stock or call options and sellers of LifeLock's publicly traded put options, who purchased or sold their stock or options between July 30, 2014 and July 21, 2015 ("the class period"). (Doc. 48, Am. Class Action Compl. ("CAC") ¶ 1.) LifeLock "provides identity theft protection services for consumers and risk management services for enterprise clients." (*Id.* ¶ 2.) Defendants

---

[1] In deciding this Motion, the Court considered the contents of the Amended Class Action Complaint and Defendants' exhibits submitted with their Motion. The Court concludes, and Plaintiffs do not dispute, that these exhibits are properly noticeable on a motion to dismiss because they are either incorporated by reference in the Amended Class Action Complaint or are "matters of public record." (*See* Doc. 58, Defs.' Req. for Judicial Notice); *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001).

Todd Davis and Chris Power ("Individual Defendants") were executives of LifeLock during the class period. (*Id.* ¶¶ 34-35.)

The CAC alleges that Defendants violated the Securities Exchange Act of 1934 ("the Exchange Act") during the class period by making false or materially misleading statements concerning the effectiveness of LifeLock's identity theft protection services and its compliance with applicable payment card industry security standards. (*Id.* ¶¶ 79-111, 119-22.) The CAC also alleges that Defendants made statements misrepresenting the scope and severity of an FTC investigation into LifeLock's compliance with a 2010 FTC Settlement Order ("2010 FTC Order"), which expressly prohibited LifeLock from misrepresenting the methods and effectiveness of its services. (*Id.* ¶¶ 135-47.) Plaintiffs allege that these misleading statements allowed LifeLock to artificially maintain the price of its common stock and call options throughout the class period. (*Id.* ¶ 166.) Plaintiffs further allege that once investors learned of the severity of the FTC investigation and that LifeLock had failed to provide its services as advertised and failed to comply with the applicable security standards, the price of common stock and call options significantly declined, and the price of put options significantly rose. (*Id.* ¶¶ 166-71.) The CAC contains two counts: (1) violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, against all Defendants, and (2) violation of Section 20(a) of the Exchange Act, against Individual Defendants. (*Id.* ¶¶ 185-99.) Defendants now move to dismiss the CAC, arguing that Plaintiffs have failed to adequately state a claim arising under Section 10(b) and Rule 10b-5. Defendants specifically argue that the CAC fails to adequately plead that Defendants made a false or misleading statement or that any of Defendants' allegedly false or misleading statements were made with scienter. (MTD at 16-35.)

## II. LEGAL STANDARDS AND ANALYSIS

Rule 12(b)(6) dismissal for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011), *cert. denied*,

*Blasquez v. Salazar*, 132 S. Ct. 1762 (2012). In determining whether an asserted claim can be sustained, "[a]ll of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party." *Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th Cir. 2012). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, "for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, the complaint must contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.

Section 10(b) or Rule 10b-5 claims also must meet the particularity requirements of Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1014 (9th Cir. 2005). Moreover, these claims must meet the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA"). *See* 15 U.S.C. § 78u-4. The PSLRA requires a securities fraud complaint to "plead with particularity both falsity and scienter." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002). To properly allege falsity, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed." *Id.* (quoting 15 U.S.C. § 78u-4(b)(1)) (quotation marks omitted). To adequately plead scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). To adequately demonstrate that

the "defendant acted with the required state of mind," a complaint must "allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." *In re Daou Sys.*, 411 F.3d at 1014-15. "[A]n actor is [deliberately] reckless if he had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although he could have done so without extraordinary effort." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010) (quoting *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000)). The Supreme Court has emphasized that courts "must review 'all the allegations holistically'" when determining whether scienter has been sufficiently pled. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 49 (2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007)). The relevant inquiry is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 323. In securities cases, falsity and scienter "are generally strongly inferred from the same set of facts" and the two requirements may be combined into a unitary inquiry under the PSLRA." *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2011).

**A. "Proactive" and "Near Real-Time" Alert Services**

Plaintiffs allege that Defendants have made a number of misleading or false statements during the class period concerning LifeLock's ability to provide its customers with "proactive" and "near real-time" alert services to prevent identity theft transactions. (CAC ¶¶ 79-111.) Plaintiffs claim that Defendants made such statements in LifeLock's SEC filings, at investor conferences, and on LifeLock's website. (*Id.*)[2] Even if the Court were to conclude that the statements identified in the CAC concerning LifeLock's alert services are false or misleading, Plaintiffs have failed to adequately plead that the statements were made with scienter. *See* 15 U.S.C. § 78u-4(b)(2) (requiring scienter to be pled "with respect to each act or omission alleged to violate this chapter"). For each of

---

[2] The CAC emphasizes some of the excerpts in bold typeface, which Plaintiffs state is meant to indicate the false or misleading statement. (CAC ¶ 79 n.2.)

the relevant statements, Plaintiffs allege that Individual Defendants "knew, or with deliberate recklessness disregarded," that LifeLock failed to send out "proactive" or "near real-time" alerts to customers. (CAC ¶ 177.) The CAC relies on the following to support this proposition: (1) a PowerPoint entitled "Project Granite" that was presented to "LifeLock executives" in March 2015; (2) statements of four confidential witnesses ("CW 1," "CW 2," "CW 3," and "CW 4"); (3) statements of former LifeLock employees Michael Peters and Stephen Burke; and (4) an allegation that the false or misleading statements were related to matters that were part of LifeLock's "core operations." (*Id.* ¶¶ 51-61, 73-77, 112-18, 172-73; Doc. 67, Resp. in Opp'n to MTD ("Resp.") at 21-28.)[3] Considering these allegations both individually and collectively, they fail to sufficiently allege that the statements at issue were made with scienter.

The allegation concerning Project Granite fails to indicate that Individual Defendants had contemporaneous knowledge of or recklessly disregarded a failure on LifeLock's part to provide "proactive" or "near real-time alerts" when such statements were made. Plaintiffs allege that Project Granite was presented to "LifeLock's executives" in March 2015, eight months into the class period. (CAC ¶ 113.) Plaintiffs claim that during this presentation the Director of Design and User Experience told LifeLock executives that LifeLock's alerts were "stale" because banks and credit card companies were capable of sending out alerts that reached their customers before LifeLock's alerts. (*Id.*) This single allegation fails to specifically state that Individual

---

[3] Plaintiffs also attached a document entitled "Joint Declaration of Hank Bates and Michael W. Sobol in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement," which was filed by the plaintiffs' counsel in *Ebarle v. LifeLock, Inc.*, No. 3:15-cv-00258-HSG (N.D. Cal.). (*See* Doc. 68-1, Ex. A, Decl. of Bates and Sobol.) Plaintiffs argue the statements within this declaration also support an inference of scienter and that it is proper for the Court to consider these allegations that are not contained within the CAC because the declaration is a "matter[] of public record." (Resp. at 1 n.3.) By arguing that the Court can infer scienter from the statements within this declaration, however, Plaintiffs' appear to seek judicial notice of the truth of the document's contents. Doing so would be inappropriate in the context of a motion to dismiss under Rule 12(b)(6); therefore, the Court will not consider the substance of the joint declaration. *See Lee*, 250 F.3d at 690 (stating that a court may not take judicial notice of disputed facts stated within public records); *see also In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1064 (C.D. Cal. 2012).

Defendants were present for the Project Granite presentation and therefore does not indicate that they had firsthand knowledge of its content. *See In re Cadence Design Sys., Inc. Sec. Litig.*, 654 F. Supp. 2d 1037, 1048-49 (N.D. Cal. 2009) (stating a plaintiff must allege facts establishing a strong inference that defendants were likely to know firsthand the facts that put them on notice of the falsity of the relevant statements). Even so, the CAC contains no allegations concerning the length of the delay between the time a customer received an alert from her bank or credit card company and an alert from LifeLock. Specifically, there are no allegations that this delay was so significant that it necessarily rendered LifeLock's alerts insufficient to allow customers to "proactively" protect their identities or that the alerts were not sent in "near real time." Because Plaintiffs have not sufficiently alleged that the information presented in Project Granite demonstrates that LifeLock's alerts did not allow its customers to "proactively" protect their identities or were not sent in "near real time," these allegations fail to indicate the statements at issue were made with scienter.

The allegations of the confidential witnesses also fail to establish that Individual Defendants had contemporaneous knowledge of or recklessly disregarded LifeLock's failure to provide "proactive" or "near real-time alerts" when such statements were made. *See Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982, 989 (9th Cir. 2008) (stating that the PSLRA demands "particular allegations which strongly imply Defendants' *contemporaneous* knowledge that the statement was false when made" (internal quotation marks and alteration omitted)).

> [A] complaint relying on statements from confidential witnesses must pass two hurdles to satisfy the PSLRA pleading requirements. First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge. Second, those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter.

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009) (citations omitted). In analyzing the first prong, whether the confidential witnesses have personal knowledge of the events they allege, a court must "look to 'the level of detail provided by

the confidential sources, the corroborative nature of the other facts alleged (including from other sources), the coherence and plausibility of the allegations, the number of sources, the reliability of the sources, and similar indicia.'" *Id.* (quoting *In re Daou Sys.*, 411 F.3d at 1015). Here, Plaintiffs describe the confidential witnesses with some "degree of specificity." *See In re Daou Sys.*, 411 F.3d at 1016. The CAC provides job titles, dates of employment, and the employee to whom the witness reported. (*See* CAC ¶¶ 74-77.) Many of their statements, however, fail to demonstrate the level of detail required to establish personal knowledge of Defendants' alleged state of mind. *See In re Daou Sys.*, 411 F.3d at 1016. Even if some of the CAC's allegations do reach the "requisite level of particularity to withstand the first prong of the . . . confidential witness test," the allegations "fail to demonstrate the deliberate recklessness required to survive the second prong." *See Zucco Partners*, 552 F.3d at 998.

The CAC alleges that CW 1 was Director of Mobile Product Management at LifeLock from August 2014 to April 2015 and reported to the Vice President of Products. (CAC ¶ 74.) It also alleges that CW 1 "took ownership of the Company's mobile products and applications," "has personal knowledge about customer alerts sent through the mobile platform," and was told that Project Granite was presented to LifeLock's senior management. (*Id.*) There are no allegations that CW 1 interacted with any Individual Defendant; therefore, the CAC does not establish that CW 1 had firsthand knowledge of whether Individual Defendants were aware that LifeLock's alerts were not "proactive" or were not being sent in "near real time." *See Zucco Partners*, 552 F.3d at 998 (stating that even a confidential witness's "generalized claims about corporate knowledge are not sufficient to create a strong inference of scienter, since they fail to establish that the witness reporting them has reliable personal knowledge of the defendants' mental state"); *Karpov v. Insight Enters., Inc.*, No. CV 09-856-PHX-SRB, 2010 WL 2105448, at *8-9 (D. Ariz. Apr. 20, 2010) (concluding that because the CAC "does not set forth the basis for the CWs' firsthand knowledge of the state of mind of the [defendants]," their statements do not establish an inference of scienter on the part of the

defendants). These allegations fail to satisfy the PSLRA pleading requirements because they lack sufficient particularity to establish CW 1's personal knowledge of Defendants' alleged state of mind.

The CAC alleges that CW 4 was a Partner Operations Implementation Analyst at LifeLock from 2007 to October 2014. (CAC ¶ 77.) It also alleges that during CW 4's employment he "had personal knowledge about LifeLock's customer alert practices, including throttling" and "had direct conversations with Defendant Davis to discuss LifeLock's internal systems issues." (*Id.*) The allegation that CW 4 at some point discussed LifeLock's "internal systems issues" with Defendant Davis fails to provide sufficient detail to establish reliability or to be indicative of scienter. There is no indication of when CW 4 spoke with Defendant Davis about LifeLock's "internal systems issues" and, specifically, there is no particular allegation that CW 4 had any discussion with Defendant Davis about such issues during the class period. *See Zucco Partners*, 552 F.3d at 997. Further, the phrase "internal systems issues" is too vague to create an inference of scienter because it does not establish that CW 4 specifically discussed with Defendant Davis whether LifeLock alerts were "proactive" or issued in "near real time." These allegations fail to satisfy the PSLRA pleading requirements because they lack sufficient particularity to establish CW 4's reliability and personal knowledge of Defendants' alleged state of mind.

The allegations concerning CW 2, CW 3, and former LifeLock employees Burke and Peters also fail to meet the PSLRA's scienter pleading requirements. The CAC alleges that CW 2 was a Senior Financial Analyst at LifeLock from June 2012 through January 2014, and that CW 3 was the Vice President of Marketing at LifeLock from 2007 to October 2011. (*Id.* ¶¶ 75-76.) It also alleges that Burke was employed as a Senior Financial Analyst and Cross Business Analytics Analyst from February 2010 to March 2013, and that Peters was employed as Chief Information Security Officer until July 2013. (*Id.* ¶¶ 14-15.) CW 2, CW 3, Peters, and Burke all left LifeLock before the class period began and, therefore, information they have about the effectiveness of LifeLock's

alerts or Individual Defendant's knowledge of the alerts during the class period is necessarily secondhand and thus "does not provide the requisite particularity to establish that certain statements of these confidential witnesses are based on the witnesses' personal knowledge." *Zucco Partners*, 552 F.3d at 996 (concluding that two confidential witnesses who were not employed during the class period "have only second-hand information about accounting practices at the corporation during that year"); *see also Shurkin v. Golden State Warriors*, 471 F. Supp. 2d 998, 1015 (N.D. Cal. 2006) ("CW3's employment ended before the Class Period and thus, CW3 lacks any personal knowledge as to the [defendant's] production activity during the [time period] that is at issue here."). These allegations do not meet the PSLRA pleading requirements because they lack sufficient particularity to establish the confidential witnesses', Peters', and Burke's reliability and personal knowledge of Defendants' alleged state of mind. Considering the CAC's scienter allegations individually and as a whole, they fail to sufficiently allege that Defendants intentionally or with deliberate recklessness made a misleading statement concerning the effectiveness of LifeLock's alerts.[4]

**B. Payment Card Industry Data Security Standard Compliance**

Plaintiffs also allege that Defendants have made false or misleading statements concerning LifeLock's compliance with "the highest standards of data security applicable to major financial institutions, which is known as Level 1 of the Payment Card Industry Data Security Standard ('PCI DSS')." (CAC ¶ 120.)[5] Plaintiffs specifically claim that

---

[4] Plaintiffs also argue that scienter may be imputed in this case under the "core operations" doctrine. (Resp. at 30-31.) Because the Court concludes that the CAC does not contain other detailed allegations concerning Individual Defendants' exposure to the relevant factual information within LifeLock, the core operations inference is insufficient to establish scienter in this case. *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784-85 (9th Cir. 2008) (stating that in the absence of other particularized supporting allegations of scienter, the "core operations" inference, by itself, is insufficient).

[5] Plaintiffs also allege that Defendants made false or misleading statements concerning LifeLock's general ability to provide "a high level of data security protection" for its customers. (CAC ¶ 119.) The CAC fails to identify any specific statement made by Defendants concerning LifeLock's ability to provide "a high level of data security protection," and instead only identifies statements concerning LifeLock's PCI DSS compliance. *See* 15 U.S.C. 78u-4(b)(1)(B) (requiring a plaintiff to "specify each statement alleged to have been misleading). Accordingly, the Court will only consider

Defendant Davis made the following false or misleading statement at an investor conference in response to a Deutsche Bank analyst's question concerning LifeLock's data security: "[O]f course we're going to look to operate under the highest data handling and data security standards, PCI Level 1, for our core business, right? That's how we're going to make sure that we operate . . . ." (*Id.* ¶ 121 (quoting Defendant Davis at the September 9, 2014 Deutsche Bank Technology Conference).) Plaintiffs also allege that throughout the class period LifeLock's website listed the following false or misleading statement under a heading entitled "Our Credentials": "Level 1 compliant under the Payment Card Industry Data Security Standard." (*Id.* ¶ 122.) Plaintiffs claim that these statements were false because LifeLock did not have adequate data security protection and, specifically, failed to "comply with PCI DSS Level 1 requirements at all relevant times." (*Id.* ¶ 123(d).)

Even if the Court were to conclude that the statements identified in the CAC concerning LifeLock's PCI DSS Level 1 compliance were actionable statements under the PSLRA, Plaintiffs have failed to adequately plead that the statements were made with scienter. The CAC relies on the following to support Plaintiffs' proposition that Individual Defendants knew or recklessly disregarded LifeLock's failure to comply with the PCI DSS Level 1 standards: (1) statements of CW 2, CW 3, and CW 4; and (2) statements of former LifeLock employee Peters. (*Id.* ¶¶ 124-34.) As stated above, CW 2, CW 3, and Peters all left LifeLock before the class period began and, therefore, they have only secondhand information about LifeLock's compliance with the PCI DSS Level 1 requirements during the relevant time period. The CAC also contains no allegations that demonstrate CW 4 interacted with an Individual Defendant during the class period in such a way that would establish his personal knowledge of Individual Defendants' alleged state of mind concerning LifeLock's Level 1 compliance. (*See id.* ¶¶ 130-34.) Further, Defendants argue, and Plaintiffs do not dispute, that LifeLock received PCI DSS Level 1 certification for its enterprise business in June 2014 and its consumer business in

---

those statements related to LifeLock's compliance with the PCI DSS Level 1 standard.

July 2014. (*See* MTD at 27 n.33; *see also* Doc. 57-1, Ex. 1, 2014 Form 10-K at 13.) The Court concludes that LifeLock's receipt of Level 1 certification shortly before the class period began further negates any inference of scienter for the two statements identified in the CAC concerning LifeLock's PCI compliance. The CAC's scienter allegations fail to sufficiently allege that Defendants intentionally or with deliberate recklessness made a misleading statement concerning LifeLock's compliance with the PCI DSS Level 1 standard.

### C. FTC Investigation

Plaintiffs also allege that Defendants have made material misrepresentations and omissions concerning the FTC's investigation into LifeLock's compliance with the 2010 FTC Order prohibiting LifeLock from misrepresenting the effectiveness of its services. (CAC ¶¶ 135-54.) Plaintiffs claim that Defendants made such misrepresentations in LifeLock's SEC filings, at investor conferences, in a press release, and during an earnings call. (*Id.* ¶¶ 138-44, 148-50.)[6] Plaintiffs allege that the statements detailed in the CAC were misleading because they downplayed the scope and severity of the FTC's investigation. Plaintiffs specifically allege that "Defendants knew that the FTC was not merely engaged in an innocent 'dialogue' or non-threatening 'inquiry,' or looking at LifeLock as part of an industry-wide, run-of-the-mill regulatory surveillance program." (*Id.* ¶ 145.) Rather, Plaintiffs argue, Defendants should have disclosed that "the FTC was formally investigating the Company in connection with the contemplated filing of a motion to hold LifeLock in contempt for violating the FTC Order." (*Id.*; *see also id.*

---

[6] Plaintiffs have alleged that Defendants made a false and misleading statement in LifeLock's 2013 Form 10-K. (*See* CAC ¶ 137.) Because courts in the Ninth Circuit have routinely concluded that statements made outside of the class period are not themselves actionable, the Court will not consider whether Defendants are liable for an alleged false or misleading statement made in LifeLock's 2013 Form 10-K. *See, e.g.*, *In re Clearly Canadian Sec. Litig.*, 875 F. Supp. 1410, 1420 (N.D. Cal. 1995); *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, No. CIV 06-02674-PHX-RCB, 2011 WL 1253250, at *32 (D. Ariz. Mar. 31, 2011); *In re Applied Micro Circuits Corp. Sec. Litig.*, No. 01-CV-0649 K AJB , 2002 WL 34716875, at *10 (S.D. Cal. Oct. 4, 2002). The Court also concludes that Plaintiffs' general allegation that "Defendants used various forms of the quoted language" from LifeLock's 2013 Form 10-K throughout the class period is insufficient to meet the PSLRA pleading requirements. (*See* CAC ¶ 138); 15 U.S.C. 78u-4(b)(1)(B).

¶ 154.) Defendants counter that they did, in fact, disclose the FTC's investigation into LifeLock in its 2013 Form 10-K and throughout the class period continued to disclose the development of the investigation and warned investors of its possible effects on LifeLock's business operations. (MTD at 20-25.) Defendants argue that these disclosures adequately addressed the scope and severity of the FTC's investigation into LifeLock and, therefore, the statements identified in the CAC are not false or misleading when considered in context. (*Id.*)

The Court concludes that, in light of LifeLock's numerous disclosures made prior to and throughout the class period concerning the FTC's investigation into its operations, Plaintiffs have failed to sufficiently allege any misstatement or omission concerning the severity or scope of the investigation. On February 19, 2014, five months prior to the class period, LifeLock disclosed that there had been a whistleblower claim against the company related to its compliance with the 2010 FTC Order, that it was expecting to receive "a formal or informal investigatory request from the FTC for documents and information," and that at any time the FTC may commence an "inquiry or investigation of . . . [LifeLock's] compliance with the FTC Order." (CAC ¶ 137.) On March 17, 2014, LifeLock filed a Form 8-K and reported that on March 13, 2014 the company had received "a request from the FTC for documents and information related to LifeLock's compliance with the [2010 FTC Order]." (Doc. 57-4, Ex. 4, Mar. 17, 2014 Form 8-K Excerpt.) On July 31, 2014, LifeLock filed its second quarter 10-Q and reiterated that there had been allegations against the company concerning its compliance with the FTC Order and that in March 2014 the FTC had requested it submit documents related to LifeLock's compliance with the FTC Order. (Doc. 57-5, 2Q 2014 Form 10-Q Excerpt at 32.) LifeLock stated that it had submitted a portion of the requested information and was working on both completing its response to the FTC's request for information and preparing a response to a subsequent request for clarification on the information it had previously submitted. (*Id.*) LifeLock went on to describe the possible consequences of and penalties if the FTC were to determine that LifeLock was not in compliance with the

terms of the 2010 FTC Order and the investigation's potential effects on LifeLock's business operations:

> A determination that we are in violation of the FTC Order, including as a result of the FTC's review of our information security programs and alert and notification processing or our PCI non-compliance in connection with the LifeLock Wallet mobile application, could result in liability for fines, damages, or other penalties or require us to make changes to our services and business practices, and cause us to lose customers, any of which could have a material adverse impact on our business, operating results, financial condition, and prospects.

(*Id.*) LifeLock referred to these disclosures in its third quarter 10-Q filed on November 10, 2014. (Doc. 57-6, Ex. 6, 3Q 2014 10-Q Excerpt.) On February 4, 2015, LifeLock filed its 2014 Form 10-K and disclosed that it had completed the FTC's request for information and on January 5, 2015 it had completed its response to the FTC's subsequent requests for clarification of certain information previously submitted. (2014 Form 10-K at 11.) LifeLock also disclosed that on February 4, 2015, it had made a $20 million settlement offer to the FTC, but advised that there was no guarantee that LifeLock could settle the inquiry for $20 million, if at all. (*Id.*) LifeLock again disclosed additional possible penalties that it may incur and the potential effects on LifeLock's business operations if the FTC were to conclude that LifeLock was not operating in compliance with the 2010 FTC Order. (*Id.*) In light of LifeLock's disclosures of the progress of the FTC's investigation and its possible adverse consequences, the Court concludes that Plaintiffs have failed sufficiently allege that Defendants misrepresented the scope or severity of the investigation and have failed to identify any undisclosed information that would have altered the "total mix" of information available to investors. *See Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)). Because the Court concludes that Plaintiffs have failed to show that LifeLock's statements concerning the scope and severity of the FTC's investigation were misleading, it need not address the issue of scienter concerning these statements.

## III. CONCLUSION

The Court grants Defendants' Motion to Dismiss because the CAC does not

adequately allege that the statements concerning LifeLock's alert services and PCI DSS Level 1 compliance were made with scienter, and it fails to sufficiently allege that the statements concerning the scope and severity of the FTC's investigation were misleading. Count One of the CAC is dismissed against all Defendants. Count Two is also dismissed because a violation of Section 20(a) of the Exchange Act, which provides for liability for "controlling" persons, requires a predicate violation of Section 10(b). *See* 15 U.S.C. § 78t(a); *Zucco Partners*, 552 F.3d at 990. As the Complaint in this case has only been amended once and because of the liberal policy in favor of amendment embodied in Federal Rule of Civil Procedure 15(a), the Court will grant the Motion to Dismiss but allow Plaintiffs to seek leave to amend no later than 21 days from the date of this Order. *See, e.g., Mark H. v. Lemahieu*, 513 F.3d 922, 939-40 (9th Cir. 2008) (citing *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004)). Plaintiffs are instructed to follow the applicable local and procedural rules governing amended pleadings in seeking leave to amend. *See* Fed. R. Civ. P. 15; LRCiv 15.1.

**IT IS ORDERED** granting Defendants' Request for Judicial Notice ISO Motion to Dismiss Amended Class Action Complaint (Doc. 58).

**IT IS FURTHER ORDERED** granting Defendants' Motion to Dismiss Amended Class Action Complaint (Doc. 56).

Dated this 3rd day of August, 2016.

Susan R. Bolton
United States District Judge