**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Miguel Avila, et al.,

Plaintiffs,

v.

LifeLock Incorporated, et al.,

Defendants.

No. CV-15-01398-PHX-SRB

**ORDER**

At issue is Defendants' Motion to Dismiss Second Amended Class Action Complaint ("MTD") (Doc. 97).[1] The Court heard oral argument on this Motion on May 15, 2017. (Doc. 112, Minute Entry.)

## I. BACKGROUND

The facts of this case have been summarized in a previous Order that is fully incorporated herein. (Doc. 80, Aug. 3, 2016 Order at 1-2.) Since their previous amended complaint was dismissed, Plaintiffs have added Hilary A. Schneider, President of LifeLock Inc. during the Class Period, as an individual Defendant to their Complaint. (Doc. 89, Second Amended Class Action Complaint ("SAC") ¶ 32). In the SAC, Plaintiffs have bolstered their allegations with statements from Confidential Witnesses 5

[1] In deciding this Motion, the Court considered the contents of the Second Amended Class Action Complaint and Defendants' exhibits submitted with their Motion. The Court concludes, and Plaintiffs do not dispute, that these exhibits are properly noticeable on a motion to dismiss because they are either incorporated by reference in the Second Amended Class Action Complaint or are "matters of public record." (*See* Doc. 99, Defs.' Req. for Judicial Notice ISO MTD); *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001).

and 6 (“CW 5”, “CW 6”). (*Id.* ¶¶ 82-83.) CW 5 was an Identity Alert Specialist with LifeLock from July 2007 to June 2015. (*Id.* ¶ 82.) Plaintiffs allege that CW 5 had knowledge of Defendants’ scienter regarding the staleness rate of credit check alerts. (*Id.*) CW 6 was a Team Manager of Escalations and Identity Operations employed by LifeLock from July 2014 until February 2016 whom Plaintiffs allege had direct interaction with Defendants Davis and Schneider and confirmed that the issue of stale alerts was “elevated to LifeLocks’s executive management. . . .” (*Id.* ¶¶ 83, 123.) The SAC also clarifies a company’s required actions under payment card industry data security standards (“PCI DSS”) and continues to allege that Defendants failed to follow established guidelines. (*Id.* ¶¶ 140-45.) Defendants argue that Plaintiffs have again failed to establish scienter as required under 15 U.S.C. §§ 78u-4(a) *et seq*. and have failed to correct the deficiencies as outlined by this Court’s prior August 3, 2016 Order. (MTD at 1.) Defendants therefore move to dismiss the SAC with prejudice. (*Id.*)

## II. LEGAL STANDARDS AND ANALYSIS

A Rule 12(b)(6) dismissal for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011), *cert. denied*, *Blasquez v. Salazar*, 132 S. Ct. 1762 (2012). In determining whether an asserted claim can be sustained, “[a]ll of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party.” *Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th Cir. 2012). “[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and ‘that a recovery is very remote and unlikely.’” *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, “for a complaint to survive a motion to dismiss, the nonconclusory ‘factual content,’ and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.” *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other

words, the complaint must contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.

Section 10(b) or Rule 10b-5 claims also must meet the particularity requirements of Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1014 (9th Cir. 2005). Moreover, these claims must meet the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA"). *See* 15 U.S.C. § 78u-4. The PSLRA requires a securities fraud complaint to "plead with particularity both falsity and scienter." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002). To properly allege falsity, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed." *Id.* (quoting 15 U.S.C. § 78u-4(b)(1)) (quotation marks omitted). To adequately plead scienter, the complaint must "state with particularity facts giving rise to a strong inference that defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). To adequately demonstrate that the "defendant acted with the required state of mind," a complaint must "allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." *In re Daou Sys.*, 411 F.3d at 1014-15. "[A]n actor is [deliberately] reckless if he had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although he could have done so without extraordinary effort." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010) (quoting *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000)). The Supreme Court has emphasized that courts "must review 'all the allegations holistically'" when determining whether scienter has been sufficiently pled. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 49 (2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007)). The relevant inquiry is "whether all of

the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 323. In securities cases, falsity and scienter "are generally strongly inferred from the same set of facts" and the two requirements may be combined into a unitary inquiry under the PSLRA." *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2011).

**A. "Proactive and "Near Real-Time" Alert Services**

Defendants argue that Plaintiffs have again failed to allege falsity and scienter with respect to individual Defendants' statements about proactive and near real-time alerts. (MTD at 13.) Plaintiffs must plead scienter "with respect to each act or omission alleged to have violated this chapter." 15 U.S.C. § 78u-4(b)(2); *see Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 998 (9th Cir. 2009) (holding the complaint could be dismissed under Fed. R. Civ. Pro. 12(b)(6) because scienter could not be established when viewed holistically or individually). Plaintiffs present a number of statements and documents from which they seek to establish scienter, including: (1) a PowerPoint presentation entitled "Project Granite" presented to "LifeLock executives" in March 2015; (2) statements of six confidential witnesses; (3) statements of former LifeLock employees; (4) an allegation that the false or misleading statements were related to the company's "core operations" so that the Court can infer corporate scienter without individual scienter; and (5) the resignation of senior executives. (*See* SAC ¶¶ 55-65, 77-84, 88-94, 105, 120-130; Doc. 103, Resp. in Opp'n to MTD ("Resp.") at 31-33.)

Much of this information is a reiteration of allegations already deemed insufficient to plead scienter in Plaintiffs' earlier complaint. In particular, the "Project Granite" briefing and the statements of confidential witnesses CW 1, CW 2, CW 3, CW 4, and former employees were not enough to sufficiently plead Defendants acted with scienter. (Aug. 3, 2016 Order at 5-9.) Here, in addition to the earlier statements, Plaintiffs provide new confidential witness statements from CW 5 and CW 6 and public statements made at company events to prove scienter. The statements of CW 5 and CW 6 are the most significant additions to Plaintiffs' SAC, but the Court must evaluate these statements

under the *Zucco*[2] test to determine their ability to satisfy the PSLRA's requirements.

**i. *Zucco* Test and Confidential Witness Statements**

*Zucco* requires that: (1) the confidential witnesses' statements must possess sufficient particularity to illustrate reliability and personal knowledge, and (2) the reported statements, which illustrate sufficient reliability and personal knowledge, must also be indicative of scienter. *Zucco Partners, LLC*, 552 F.3d at 995. Even reviewing the statements of CW 5 holistically, they fail to pass the *Zucco* test. The allegations state that CW 5 was an Identity Alert Specialist at LifeLock throughout the class period, had regular contact with LifeLock executives, and managed Defendant Davis' personal LifeLock account. (SAC ¶ 82.) CW 5 was responsible for generating reports regarding alert trends and sending those reports to Vice President of Member Services Rob Ryan. (*Id.* ¶¶ 82, 121.) Plaintiffs allege these reports circulated throughout LifeLock's executive management team, including Defendant Schneider, based on information provided by Mr. Ryan to CW 5. (*Id.*) CW 5 asserts that Mr. Ryan told her that he not only provided Defendant Schneider the reports, but that he also held meetings with her regarding the data contained in the reports. (*Id.* ¶ 121.) Plaintiffs' allegations, however, fail to provide any concrete information about the level of discussion in regards to the data, the specific data discussed, the length of these meetings, or any other information about Mr. Ryan's access to the individual Defendants. Here, CW 5's allegations rely on statements to him/her from Mr. Ryan, but there is nothing in the SAC to allege Mr. Ryan's reliability and personal knowledge. While hearsay may be used to support a complaint, it must be "sufficiently reliable, plausible, or coherent" to be considered probative of scienter. *Lloyd v. CVB Financial Corp.*, 811 F.3d 1200, 1208 (9th Cir. 2016). Plaintiffs in this case fail to provide the foundational information that would show the information is sufficiently reliable to justify the use of hearsay. The allegations do not illustrate whether Mr. Ryan's position was in sufficient parity with Defendants to infer his communications would reach these individuals. Moreover, it is unknown if Mr. Ryan's position as "Vice

[2] 552 F.3d at 995.

President of Member Services" would require him to communicate this information directly to top executives. The SAC also fails to provide any details regarding the alleged conversations between Mr. Ryan and CW 5. Therefore, CW 5's allegations based on statements from Mr. Ryan are insufficient to establish scienter.

In addition to statements from Mr. Ryan, CW 5 states Defendant Schneider acknowledged being aware of "stale" alerts transmitted to customers after a question from one of the attendees at a company lunch where CW 5 was present. (SAC ¶¶ 122, 130.) This statement may establish personal knowledge on the part of CW 5, however, Defendant Schneider's general awareness of "stale" alerts does not show knowledge of the systemic problem alleged by Plaintiffs. These statements by Plaintiffs' CW 5 also fail to satisfy the *Zucco* test.

The SAC states that CW 6 was an employee at LifeLock from July 2014 to February 2016 as a Member Services Team Manager, and later as a Manager of Escalations and Identity Operations. (*Id.* ¶ 83.) CW 6 alleges that "stale" alerts were continuous throughout the class period, and the issues were brought to the attention of "executive management" but fell on "deaf ears." (*Id.* ¶ 123.) The SAC indicates CW 6 reported the information to his or her supervisor who was multiple levels of authority below any named Defendant. (*Id.* ¶ 83.) The SAC fails to allege CW 6 had any personal contact with any named Defendant in regards to the issue of "stale" alerts. In fact, the Court can only infer CW 6 may have had direct communication with individual Defendants from a statement that CW 6 responded to customer complaints in Defendant Schneider's stead. (*Id.*) Such an inference, however, does not reasonably lead to an inference that CW 6 ever spoke to Defendant Schneider concerning stale alerts or that she was aware of the contents of the customer complaint letters. CW 6's statements fail the *Zucco* test.

**ii. Corporate Scienter**

Plaintiffs argue that, in lieu of finding scienter for individual Defendants, this Court should impute corporate or collective scienter to LifeLock as a corporate entity.

(Resp. at 37-38.) The Ninth Circuit may allow for some form of corporate scienter, but only in situations where "a company's public statements were so important and so dramatically false that they would create a strong inference that at least *some* corporate officials knew of the falsity upon publication." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 744 (9th Cir. 2008). In coming to this tentative conclusion, the Ninth Circuit relied on a hypothetical given by the Seventh Circuit in which a car manufacturer announced it had sold one million SUVs in a year when it had actually sold zero. *Id.* at 743-44 (citing *Makor Issues & Rights , Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 710 (7th Cir. 2008)). Therefore, the doctrine of corporate scienter is limited only to situations in which statements are so dramatically false that their falsity should be obvious to corporate officials with reasonable knowledge about their companies. *See In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liab. Litigation*, No. 3:15-md-2672-CRB, 2017 WL 66281, 14-15 (N.D. Ca. Jan. 4, 2017) (finding that the alleged fraud regarding Volkswagen's diesel engines was so widespread and integral to the company's business strategy that it was highly unlikely that executive management could have been unaware of it). Here, Plaintiffs alleged the credit alerts were one of the most important aspects of LifeLock's business and were one of the driving factors leading customers to purchase more expensive plans. (SAC ¶¶ 45-47, 120.) These alerts, however, were only a single element of the service provided by the company and the SAC provides only passing statements by CW 5 that they were a primary driver in customer purchases of the "Ultimate Plus" package. (*Id.* ¶ 120.) This distinguishes this case from other cases where the falsity was so vast and vital to a company's operations that a court could impute scienter to the corporate entity. The SAC does not sufficiently allege corporate scienter to defeat Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

**iii. Resignations**

Plaintiffs argue that the resignations of Defendants Davis and Power three and five months respectively after the FTC settlement supports an inference of scienter. (Resp. at 38-39.) In order for a resignation to support an inference of scienter, a plaintiff must

allege "that the resignation at issue was uncharacteristic when compared to the defendant's typical hiring and termination patterns or was accompanied by suspicious circumstances." *Zucco Partners, LLC*, 552 F.3d at 1002. Absent such allegations, "the inference that the defendant corporation forced certain employees to resign because of its knowledge of the employee's role in the fraudulent representations will never be as cogent or as compelling as the inference that the employees resigned or were terminated for unrelated personal or business reasons." *Id.* Plaintiffs have failed to allege that the resignations of Defendants Davis and Powers were uncharacteristic or accompanied by suspicious circumstances. (*See* SAC ¶¶ 176-80.) Indeed, it is neither surprising nor suspicious that the CEO and CFO of a company would resign following a lawsuit and settlement with the FTC. Therefore, the Court concludes that Plaintiffs have failed to allege an adequate inference of scienter with regard to statements about proactive and near real-time alerts.[3]

**B. Payment Card Industry Data Security Standard Compliance**

This Court previously held that the PCI DSS certification LifeLock received just prior to the Class Period negates any inference of scienter in statements made that LifeLock complied with or would comply with PCI DSS standards. (Aug. 3, 2016 Order at 10-11.) Moreover, the statements made by the Defendants were not promises or assurances that the company was operating within PCI DSS standards at all times, but were statements that the company strives to operate at that level or had already received the certification. (*See* SAC ¶¶ 132-33). The SAC does not make any new allegations that contribute to the scienter of the Defendants. The new amendments further clarify the PCI DSS certification requirements and illustrate how the company failed to operate at that level, but they do not show scienter on behalf of the individual Defendants. (*See id.* ¶¶ 139-44.) While Plaintiffs allege that Defendant Schneider did acknowledge issues

---

[3] Plaintiffs again argue that scienter may be imputed in this case under the "core operations" doctrine. (Resp. at 37.) The Court rejects this argument for the same reasons it rejected it previously; in the absence of other particularized supporting allegations of scienter, the "core operations" inference, by itself, is insufficient. (Aug. 3, 2016 Order at 9 n.4); *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784-85 (9th Cir. 2008).

related to enrollment of new LifeLock customers and problems faced with the automation process, that alone does not establish scienter in regards to the PCI DSS compliance (*See id.* ¶ 146.) These acknowledgements related to issues with the entire system rather than PCI DSS compliance alone and are insufficient to show that Defendant Schneider was aware of the specific failures alleged. (*See id.* ¶¶ 140-44.) Therefore, the Court concludes that Plaintiffs failed to adequately plead scienter on the part of Defendants with regards to PCI DSS compliance.

**C. FTC Investigation**

Plaintiffs made minimal changes to the SAC's allegations regarding the FTC investigation. (*See* SAC ¶¶ 155, 165, 167, 178-180.) Plaintiffs stated they re-pled these allegations in order to preserve them for appeal in accordance with Ninth Circuit case law. (Resp. at 9); *see Lacy v. Maricopa Cnty.*, 693 F.3d 869 (9th Cir. 2012) (holding a claim dismissed with leave for amend must be re-pled to preserve for appeal). Because there have been no meaningful changes, the Court dismisses the allegations related to the FTC Investigation.

**D. Dismissal with Prejudice**

Defendants argue the Court should dismiss the SAC with prejudice. (MTD at 1.) Plaintiffs request this Court permit them leave to amend their complaint. (Resp. at 40.) Federal Rule of Civil Procedure 15 provides that a party may amend its pleading with leave of court, and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In deciding whether justice requires granting leave to amend, factors to be considered include the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Further leave to amend is not warranted because Plaintiffs have repeatedly failed to cure deficiencies in their Complaint. Plaintiffs acknowledge they made minimal

changes to their claim regarding the FTC investigation. Plaintiffs clarified the PCI DSS requirements for companies in their SAC, but failed to address that Defendant received the certification just prior to the start of the class period. Moreover, the only new statement from an individual Defendant is stating that a system upgrade would cost $100 million and LifeLock "can't afford that." (SAC ¶ 146.) This statement, however, appears to discuss the costs of correcting issues related to enrollment, automation, and reduction of system downtime and were not directly related to the data security standard. (*Id.*) These statements are not indicative of scienter and there is no indication that further leave to amend will provide the requisite scienter. Finally, Plaintiffs have repeatedly failed to cure deficiencies in their attempts to plead scienter with respect to Lifelock's alleged failure to provide near real-time alerts. Therefore, the Court grants Defendants' Motion to Dismiss with prejudice.

## III. CONCLUSION

The Court grants Defendants' Motion to Dismiss the SAC because it fails to sufficiently allege that Defendants made statements concerning LifeLock's alert services and PCI DSS compliance with scienter. Moreover, Plaintiffs acknowledge they made no substantial changes to the FTC complaints and only sought to preserve those claims for appeal. Additionally, the facts of this case do not allow for an inference of corporate scienter. This was Plaintiff's third opportunity to submit a complaint with sufficient facts to support a cognizable legal claim, but they have failed to fulfill this requirement. Therefore, the Court grants Defendants' request to dismiss the SAC with prejudice.

**IT IS ORDERED** granting Defendants' Motion to Dismiss Second Amended Class Action Complaint with prejudice (Doc 97).

**IT IS FURTHER ORDERED** granting Defendants' Request for Judicial Notice in Support of Motion to Dismiss Second Amended Class Action Complaint (Doc. 99).

///

///

///

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly.

Dated this 21st day of August, 2017.

Susan R. Bolton
United States District Judge