Kimberly C. Page (AZ # 022631)
BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone:    (602) 274-1100
Facsimile:    (602) 274-1199
Email: kpage@bffb.com

*Liaison Counsel for Lead Plaintiffs the Oklahoma Police Pension and Retirement System and the Oklahoma Firefighters Pension and Retirement System and Liaison Counsel for the Proposed Class*

*(Lead Counsel for Lead Plaintiffs Oklahoma Police Pension and Retirement System and Oklahoma Firefighters Pension and Retirement System and for the Proposed Class Appear on the Signature Page)*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Miguel Avila, on Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> LifeLock Inc., Todd Davis, Chris G. Power, and Hilary A. Schneider, <br><br> Defendants. | CASE NO. 2:15-cv-01398-SRB <br><br> CLASS ACTION <br><br> **LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

MOTION ............................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 2

I.  PROCEDURAL HISTORY OF THE CASE ......................................................... 2

II.  NEGOTIATION OF THE SETTLEMENT AND TERMS OF THE
PROPOSED SETTLEMENT ................................................................................. 4

ARGUMENT ........................................................................................................................ 4

I.  STANDARDS FOR PRELIMINARY APPROVAL OF THE
SETTLEMENT ........................................................................................................ 4

II.  NOTICE IS WARRANTED AS THE SETTLEMENT IS FAIR,
REASONABLE, AND ADEQUATE PURSUANT TO RULE 23(e)(2) .............. 6

    A.  Lead Plaintiffs and Lead Counsel Adequately Represented the
Settlement Class ............................................................................................ 6

    B.  The Settlement Was Negotiated at Arm's-Length ....................................... 7

    C.  The Relief Provided by the Settlement Is Adequate .................................... 7

        1.  This Settlement Is Well Within the Range of Reasonableness ......... 7

        2.  The Effective Process for Distributing Relief ................................. 10

        3.  The Anticipated Attorney's Fees and Expenses Are Reasonable .... 11

    D.  Settlement Class Members Are Treated Equitably Relative to One
Another ......................................................................................................... 12

III.  PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS ............. 12

    A.  The Settlement Class Meets the Requirements of Rule 23(a) .................... 12

        1.  Rule 23(a): Numerosity ................................................................... 12

        2.  Rule 23(a)(2):  Questions of Law or Fact Are Common ................ 13

        3.  Rule 23(a)(3): Lead Plaintiffs' Claims Are Typical ....................... 13

        4.  Rule 23(a)(4):  The Lead Plaintiffs Are Adequate
Representatives ................................................................................. 14

1

      B.     The Settlement Class Meets the Requirements of Rule 23(b)(3) – Predominance and Superiority .................................................................... 14

2

IV.    NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE

3

     PSLRA REQUIREMENTS ................................................................................... 15

4

CONCLUSION........................................................................................................................ 17

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Affiliated Ute Citizens of Utah v. U.S.*
5       406 U.S. 128 (1972) ...................................................................................... 15

6

*Amchem Prods., Inc. v. Windsor*,
7       521 U.S. 591 (1997) ...................................................................................... 14

8

*In re Audioeye, Inc., Sec. Litig.*,
        No. CV-15-00163-TUC-DCB, 2017 WL 5514690 (D. Ariz. May 8, 2017) ................ 11
9

*In re Banc of Cal. Sec. Litig.*,
10      No. SACV 17-00118, 2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) .............................. 7

11

*Basic Inc. v. Levinson*,
12      485 U.S. 224 (1988) ...................................................................................... 15

13

*Blackie v. Barrack*,
14      524 F.2d 891 (9th Cir. 1975) ........................................................................... 13

15

*Ciuffitelli v. Deloitte & Touche LLP*,
        No. 16 cv 00580, 2019 WL 1441634 (D. Or. Mar. 19, 2019) ....................................... 12
16

*In re Comput. Memories Sec. Litig.*,
17      111 F.R.D. 675 (N.D. Cal. 1986) ..................................................................... 13

18

*Hanlon v. Chrysler Corp.*,
19      150 F.3d 1011 (9th Cir. 1998) ......................................................................... 13

20

*Hefler v. Wells Fargo & Co.*,
        No. 16-05479, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ....................................... 7
21

22

*Howell v. JBI, Inc.*,
        298 F.R.D. 649 (D. Nev. 2014) ......................................................................... 12
23

*In re HP Sec. Litig.*,
24      No. 12-cv-05980-CRB, 2015 WL 4477936 (N.D. Cal. July 20, 2015) ...................... 16

25

*Lane v. Facebook, Inc.*,
26      696 F.3d 811 (9th Cir. 2012) ........................................................................... 15

27

28

*Lo v. Oxnard European Motors, LLC*,
    No. 11-cv-1009 JLS (MDD), 2011 WL 6300050 (S.D. Cal. Dec. 15,
    2011) .................................................................................................... 10

*McPhail v. First Command Fin. Planning, Inc.*,
    No. 05-cv-179-IEG-JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009).................. 8, 15

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000)............................................................................ 14

*In re NVIDIA Corp. Derivative Litig.*,
    No. 06-cv-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22,
    2008) ...................................................................................................... 6

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................... 8

*In re Portal Software, Inc. Sec. Litig.*,
    No. 03-cv-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ........................ 7

*In re Syncor ERISA Litig.*,
    227 F.R.D. 338 (C.D. Cal. 2005) ................................................................... 13

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008).......................................................................... 4

*Tsirekidze v. Syntax-Brillian Corp.*,
    No. CV-07-02204-PHX-FJM, 2009 WL 2151838 (D. Ariz. July 17,
    2009) .................................................................................................... 13

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)........................................................................ 11

*Wood v. Ionatron, Inc.*,
    No. CV 06-354-TUC-CKJ, 2009 WL 10673479 (D. Ariz. Sept. 28, 2009)........ 4, 11, 12

**Docketed Cases**

*City of Sunrise Gen. Emp. Ret. Plan v. FleetCor Techs., Inc.*,
    Civ. A. No. 1:17-cv-02207-LMM (N.D. Ga. Mar. 24, 2020).......................... 2

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 5:16-md-02752-LHK (N.D. Cal. Mar. 23, 2020)..................................... 2

**Rules**

Fed. R. Civ. P. 23.......................................................................... 1, 16

Fed. R. Civ. P. 23(a) ................................................................................................ 12

Fed. R. Civ. P. 23(a)(1) ........................................................................................... 12

Fed. R. Civ. P. 23(a)(2) ........................................................................................... 13

Fed. R. Civ. P. 23(a)(3) ........................................................................................... 13

Fed. R. Civ. P. 23(a)(4) ........................................................................................... 14

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 14

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................... 15

Fed. R. Civ. P. 23(e) ............................................................................................ 2, 5

Fed. R. Civ. P. 23(e)(1)(A) ........................................................................................ 5

Fed. R. Civ. P. 23(e)(1)(B) ........................................................................................ 5

Fed. R. Civ. P. 23(e)(2) ......................................................................................... 5, 6

Fed. R. Civ. P. 23(e)(2)(C)(iv) ................................................................................... 5

Fed. R. Civ. P. 23(e)(2)(D) ...................................................................................... 12

Fed. R. Civ. P. 23(e)(3) .............................................................................................. 5

Fed. R. Civ. P. 23(g) ............................................................................................... 14

**MOTION**

Lead Plaintiffs the Oklahoma Police Pension and Retirement System and the Oklahoma Firefighters Pension and Retirement System (collectively, "Lead Plaintiffs"), on behalf of themselves and the proposed Settlement Class, hereby move this Court, for an Order, pursuant to Rule 23 of the Federal Rules of Civil Procedure: (i) preliminarily approving the proposed Settlement; (ii) preliminarily certifying the Settlement Class and appointing Lead Plaintiffs as class representatives and Lead Counsel as class counsel, for purposes of settlement; (iii) approving the form, content and manner of providing notice to the Settlement Class; (iv) setting a hearing date to consider final approval of the Settlement, approval of the Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and litigation expenses (the "Settlement Hearing"); (v) appointing JND Legal Administration ("JND") as the claims administrator to administer the notice and claims process; and (vi) granting such other and further relief as the Court may deem fair and proper. Defendants do not oppose the relief requested in this motion.

This motion is based on the accompanying Memorandum of Points and Authorities and the Declaration of Carol C. Villegas, dated April 3, 2020, with annexed exhibits, filed herewith. A proposed Order, which was negotiated by the Parties to the Settlement, is also submitted herewith.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

Lead Plaintiffs respectfully submit that the Settlement is a very favorable result for the Settlement Class, and should be preliminarily approved by the Court.[1] The Settlement provides a recovery of $20,000,000 in cash to resolve claims against Defendants LifeLock, Inc. ("LifeLock," or "the Company"), Todd Davis ("Davis"), Chris Power ("Power"), and

---

[1]    All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation and Agreement of Settlement, dated as of March 27, 2020 (the "Stipulation"), filed herewith as Exhibit 1 to the Declaration of Carol C. Villegas ("Villegas Decl."). All exhibits referenced below are attached to the Villegas Declaration.

1    Hilary Schneider ("Schneider") in the Action.

2        Lead Plaintiffs seek preliminary approval of the Settlement so that notice may be

3    provided to the Settlement Class and the Settlement Hearing can be scheduled.[2] Lead

4    Plaintiffs respectfully submit that the Settlement warrants preliminary approval given that

5    it is the result of vigorous arm's-length negotiations by experienced counsel overseen by a

6    well-respected Mediator, represents a favorable recovery that falls well within the range of

7    approval, and is very likely to meet all of the approval factors required by Fed. R. Civ. P.

8    23(e) and Ninth Circuit precedent.

9        Entry of the proposed Preliminary Approval Order will begin the process of

10   considering final approval by authorizing notice of the Settlement to members of the

11   Settlement Class. A final Settlement Hearing will then be conducted, after the Settlement

12   Class has been given an opportunity to object or seek exclusion, so that the Court can

13   make a final determination as to whether the Settlement is fair, reasonable, and adequate.

14   <u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

15   **I.    PROCEDURAL HISTORY OF THE CASE**

16       On July 22, 2015, the above captioned securities class action was filed in the United

17   States District Court for the District of Arizona on behalf of investors in LifeLock.

18   Oklahoma Police Pension and Retirement System and Oklahoma Firefighters Pension and

19   Retirement System were appointed Lead Plaintiffs on October 9, 2015 and the law firms of

20   Bernstein Liebhard LLP and Labaton Sucharow LLP were appointed as Lead Counsel and

21   Bonnett, Fairbourn, Friedman, & Balint, P.C. as Liaison Counsel.

22

23   [2]     In light of conditions resulting from the COVID-19 pandemic, the Settlement

24   Hearing may be conducted either by telephone or in-person, at the Court's discretion. *See*
     *City of Sunrise Gen. Emp. Ret. Plan v. FleetCor Techs., Inc.*, Civ. A. No. 1:17-cv-02207-

25   LMM (N.D. Ga. Mar. 24, 2020), ECF No. 104 (ordering that, in light of COVID-19, final
     settlement hearing in securities class action should proceed at date and time scheduled in

26   the notice but be conducted telephonically); *In re Yahoo! Inc. Customer Data Sec. Breach*

27   *Litig.*, No. 5:16-md-02752-LHK (N.D. Cal. Mar. 23, 2020), ECF No. 448 (same). If the
     Settlement Hearing is held telephonically, instructions concerning how Settlement Class

28   Members can participate by telephone will be posted on the Settlement website.

On December 10, 2015, Lead Plaintiffs filed an Amended Class Action Complaint, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), against LifeLock, Todd Davis and Chris Power. Defendants filed a motion to dismiss the amended complaint on January 29, 2016, which Lead Plaintiffs opposed on March 21, 2016. The Court issued an Order on August 3, 2016 granting the motion to dismiss. The Order allowed Lead Plaintiffs to seek leave to amend.

On October 14, 2016, Lead Plaintiffs filed the operative, Second Amended Class Action Complaint (the "Complaint"), alleging violations of Sections 10(b) and 20(a) of the Exchange Act against LifeLock, Davis, Power, and Schneider. Defendants filed a motion to dismiss on December 16, 2016, and following further briefing, on August 21, 2017, the Court issued an Order granting Defendants' motion to dismiss with prejudice for failure to adequately plead scienter as to statements related to the Company's alert services and PCI-DSS compliance, and for failure to adequately plead falsity as to statements related to the Federal Trade Commission ("FTC's") investigation of the Company (the "MTD Order"). On August 21, 2017, the Court entered judgment in favor of Defendants.

On September 19, 2017, Lead Plaintiffs filed a notice of appeal to the Ninth Circuit Court of Appeals ("Ninth Circuit") appealing the MTD Order, as well as all prior orders and rulings merged therein. Lead Plaintiffs appealed from the Court's dismissal of those alleged misstatements related to the Company's alert services and did not appeal the dismissal of any alleged misstatements related to LifeLock's PCI-DSS compliance or the FTC investigation. Oral argument was heard on January 16, 2019.  On August 29, 2019, the Ninth Circuit issued an Order reversing in part and affirming in part the Court's MTD Order, and remanding the case for further proceedings consistent with the Order.

The Parties engaged in accelerated discovery in which they negotiated mutually agreeable search parameters and produced responsive documents thereto. In total, Lead Plaintiffs produced approximately 14,671 pages of documents. Defendants produced

approximately 62,385 documents. The Parties also deposed a witness who provided information used in the Complaint.

## II.   NEGOTIATION OF THE SETTLEMENT AND TERMS OF THE PROPOSED SETTLEMENT

In late 2019, Lead Plaintiffs and Defendants began exploring the possibility of a settlement, and engaged retired District Court Judge Layn Phillips, Esq., ("Judge Phillips") a well-respected and highly experienced mediator, to assist them in a potential negotiated resolution of the claims against Defendants. While engaging in discovery, in February 2020, the Parties exchanged detailed opening and reply mediation statements. The Parties engaged experts to address causation and damages, while using document and deposition discovery to address liability issues. On March 4, 2020, the Parties engaged in a full-day mediation session before the Mediator. During the mediation, Parties were able to reach an agreement in principle to settle the claims against Defendants, resulting in a signed memorandum of understanding for the settlement that same day.

The Parties subsequently negotiated the terms of the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a release of all claims asserted against Defendants in the Action, and related claims ("Released Claims"), in return for a cash payment by LifeLock (on behalf of all Defendants) of $20,000,000 in cash (the "Settlement Amount") for the benefit of the Settlement Class.

## ARGUMENT

## I.   STANDARDS FOR PRELIMINARY APPROVAL OF THE SETTLEMENT

As a matter of public policy, settlement is strongly favored, "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Wood v. Ionatron, Inc*., No. CV 06-354-TUC-CKJ, 2009 WL 10673479, at *2 (D. Ariz. Sept. 28, 2009) ("the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy of encouraging settlements to an overriding public interest").[3]

---

[3]   All internal quotations and citations are omitted unless otherwise noted.

Federal Rule of Civil Procedure 23(e) requires court approval for any class action settlement. This motion for preliminary approval of the Settlement is the first step to final approval, whereby the parties "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Rule 23(e)(1)(A). Giving notice of the settlement to the class is justified by providing information "showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(1)(B).

Rule 23(e)(2) lists criteria for evaluating the adequacy of a settlement, requiring a review of the likelihood that: (a) Lead Plaintiff and Lead Counsel adequately represented the class; (b) the Settlement was negotiated at arm's-length; (c) the relief provided to the class is adequate, taking into account: (i) the costs, risks and delays of trial and appeal; (ii) effectiveness of any proposed method of distributing relief to the class; (iii) terms of any proposed award of attorneys' fees; and (iv) any agreement required to be identified under Rule 23(e)(3)[4]; and (d) the proposal treats class members equitably relative to each other.

As discussed below, the proposed Settlement readily satisfies the Rule 23(e)(2) factors and the Settlement Class is appropriate for certification such that the Settlement should be preliminary approved, and the Settlement Class should receive the Notice of the Settlement.

---

[4] Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement in connection with a proposed settlement.  Here, on March 4, 2020 the Parties entered into a memorandum of understanding and as of March 27, 2020, they entered into a confidential Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement"). The Supplemental Agreement sets forth the conditions under which LifeLock has the discretion to terminate the Settlement if requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold.  As is standard in securities settlements, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The Supplemental Agreement, Stipulation, and memorandum of understanding are the only agreements concerning the Settlement entered into by the Parties.

## II.     NOTICE IS WARRANTED AS THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE PURSUANT TO RULE 23(e)(2)

### A.     Lead Plaintiffs and Lead Counsel Adequately Represented the Settlement Class

Oklahoma Police Pension and Retirement System and the Oklahoma Firefighters Pension and Retirement System were appointed Lead Plaintiffs after a finding that they were the "most adequate plaintiffs" to represent the Settlement Class. *See* ECF No. 31. Lead Plaintiffs are sophisticated institutional investors who each have substantial experience leading numerous securities class actions. Throughout the Action, Lead Plaintiffs also benefited from the advice of knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases. Bernstein Liebhard LLP and Labaton Sucharow LLP are among the most experienced and skilled firms in the securities litigation field, and each has a long and successful track record in such cases. *See* Exhibits 2-3, firm resumes. Both firms have served as lead counsel in a number of high profile and influential cases. *Id*.

Lead Counsel vigorously litigated the Action since its inception. Lead Counsel, among other things: (i) conducted a thorough investigation that included the review of publicly available information regarding the Company and interviews of former employees and third Parties; (ii) prepared two amended complaints; (iii) opposed two motions to dismiss; (iv) litigated an appeal before the Ninth Circuit; (v) conducted accelerated discovery; (vi) analyzed Defendants' mediation statements and exhibits; (vii) analyzed documents produced by Defendants in connection with the mediation; and (viii) consulted with experts concerning damages and loss causation. Prior to, and over the course of the litigation, Lead Counsel explored the strengths and weaknesses of the claims and defenses and developed a deep understanding of the merits of the claims.

The Settlement was reached only after mediated negotiations between counsel with extensive knowledge and expertise litigating securities fraud class actions. At the conclusion of this process Lead Counsel believe that this is a fair and reasonable

settlement. *See, e.g.*, *In re NVIDIA Corp. Derivative Litig*., No. 06-cv-06110-SBA (JCS), 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement.").

### B. The Settlement Was Negotiated at Arm's-Length

Courts have long recognized that there is an initial presumption that a proposed settlement is fair and reasonable when it is the "product of arms-length negotiations." *In re Portal Software, Inc. Sec. Litig*., No. 03-cv-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007). The use of an experienced mediator is an "important factor" supporting a finding that this requirement is satisfied. *See In re Banc of Cal. Sec. Litig*., No. SACV 17-00118, 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019); *see also Hefler v. Wells Fargo & Co*., No. 16-05479, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) (finding that settlement was the product of arms-length negotiation where, as here, mediation was conducted by retired District Court Judge Layn Phillips). Here, Lead Plaintiffs and Lead Counsel agreed to settle after rigorous lengthy litigation and through a mediation process overseen by a highly regarded and experienced mediator, Judge Phillips.

### C. The Relief Provided by the Settlement Is Adequate

#### 1. This Settlement Is Well Within the Range of Reasonableness

The $20 million Settlement Amount presents a favorable recovery when compared to the median settlement value in securities class action settlements in 2019, which was reported by Cornerstone Research to be $11.5 million. *See* Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements – 2019 Review and Analysis at 1 (Cornerstone Research 2020), attached as Exhibit 4 to the Villegas Declaration.

Moreover, the Settlement provides a favorable recovery as a proportion of estimated damages, were the case to continue. The Settlement recovers approximately 5% of the $416 million in maximum estimated damages, and up to 10% of damages when factoring in the real risk that Lead Plaintiffs would need to "disaggregate," or parse out, non-fraud

related stock price movement and account for an October 29, 2015 stock price recovery. Since the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), courts have approved settlements that recovered a similar, or smaller, percentage of maximum damages. *See, e.g., McPhail v. First Command Fin. Planning, Inc.,* No. 05-cv-179-IEG-JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering 7% of estimated damages was fair and adequate); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

Here, Lead Plaintiffs' damages expert estimated that the maximum aggregate damages for this Action would be approximately $416 million. However, this case involved allegations that arguably required material reductions to damages if Lead Plaintiffs had to disaggregate the price impact of multiple revelations. The Complaint alleged that three revelations from the FTC contempt proceedings caused the stock price to drop: 1) that alerts were not near real-time; 2) there was a lack of PCI compliance; and 3) LifeLock understated the severity of the FTC investigation. Consistent the Ninth Circuit's decision, liability could only attach to the false statements concerning alerts.

Accordingly, Defendants would likely argue that the class could only recover for the decrease in stock price related to the alerts statements. How a jury would determine the value of the alerts statements versus the value of other non-fraudulent revelations is unknown and presented significant challenges. But even assuming a disaggregation model where 50% of the abnormal return on July 21, 2015 was disaggregated to account for the value of the alerts statements, recoverable damages would decrease to $249 million from $416 million (which increases the value of the Settlement to an 8% recovery for the Settlement Class).

In addition to a disaggregation to account for other causes of loss, Defendants would argue that most of the price drop was speculation by the market and did not reflect the value of the alerts statements. They would likely argue that the overreaction is proved by a bounce-back in LifeLock's stock price after its October 29, 2015 announcement that the FTC Settlement was within a range originally communicated to investors prior to July 21, 2015. While Lead Plaintiffs do not concede that an offset of damages is required, such an offset could further reduce recoverable damages, by over half the maximum damages, to $199 million, making the $20 million Settlement a 10% recovery for the Settlement Class.

Defendants would also likely argue that Lead Plaintiffs cannot establish that any recoverable losses were caused by the two alleged corrective disclosures. Defendants would argue that the first corrective disclosure on February 10, 2015 merely announced that LifeLock was taking a reserve for a previously disclosed FTC investigation and this announcement contained no information—much less new information—regarding LifeLock's alerts. Defendants would also argue that the second alleged corrective disclosure on July 21, 2015, the FTC's announcement that it was initiating contempt proceedings against LifeLock revealed only *potential* wrongdoing—there was no subsequent adjudication or admission that confirmed *any* wrongdoing occurred. Additionally, if Lead Plaintiffs were unable to develop a scientifically reasonable method for disaggregating loses related to the alerts statements, then Lead Plaintiffs would be unable to prove an element of their claims, and none of the class members could recover for their loss.

The Settlement is also reasonable because it provides the Settlement Class, whose claims have been pending since 2015, with a prompt and substantial tangible recovery, without the considerable risk, expense, and delay of litigating to completion. Though Lead Plaintiffs believe they could have succeeded in establishing each of the elements of the alleged claims, Defendants would likely have sought summary judgment and there was no

guarantee that the proposed class would prevail in Defendants' continuous challenges and, even if they did, how the Court's rulings would affect damages or how the case would be presented to the jury. Regarding falsity, Defendants would have likely argued that LifeLock never stated that *all* of its alerts were near real-time or actionable. To the contrary, Defendants would argue that LifeLock repeatedly and plainly told investors that its alerts were subject to limitations. With respect to scienter, Defendants would argue that Lead Plaintiffs would not be able to prove that any Defendant knowingly made statements with the required intent to defraud or with severe recklessness, especially because they believed they adequately told the market that the various alerts they provided came with obvious and disclosed limitations.

These risks aside, additional discovery would have been protracted and the trial of Lead Plaintiffs' claims would inevitably be long and complex, and even a favorable verdict would undoubtedly spur a lengthy post-trial and appellate process. *See, e.g.*, *Lo v. Oxnard European Motors, LLC*, No. 11-cv-1009 JLS (MDD), 2011 WL 6300050, at *5 (S.D. Cal. Dec. 15, 2011) (addressing preliminary approval and stating that "'[c]onsidering the potential risks and expenses associated with continued prosecution . . . the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation,' the Court finds that, on balance, the proposed settlement is fair, reasonable, and adequate").

### 2.        The Effective Process for Distributing Relief

The Settlement will be effectuated with the assistance of an experienced claims administrator. The Claims Administrator will employ a well-established protocol for the processing of claims in a securities class action. Potential class members will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate and calculate their respective "Recognized Claim" based on the Court-approved Plan of Allocation. *See* Stipulation ¶24.

Lead Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest rejection. Any claim disputes that cannot be resolved will be presented to the Court for a determination.

After the Settlement reaches its Effective Date (*see* Stipulation ¶39) and the passing of all applicable deadlines, Authorized Claimants will be issued checks. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion. Once it is no longer feasible or economical to make further distributions, any balance that still remains in the Net Settlement Fund after re-distribution(s) and after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, shall be contributed to a non-sectarian, not-for-profit charitable organization serving the public interest designated by Lead Plaintiffs and approved by the Court. *See* Stipulation ¶27.

### 3.    The Anticipated Attorney's Fees and Expenses Are Reasonable

As set forth in the Notice, Lead Counsel intends to request attorneys' fees of no more than 30% of the Settlement Fund and litigation expenses of no more than $350,000, which may include an application for reimbursement by the Lead Plaintiffs pursuant to the PSLRA. A fee request of no more than 30%, while slightly above the 25% "benchmark" within the Ninth Circuit, would be consistent with other settlements approved in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) (fee of 28% awarded)*; In re Audioeye, Inc., Sec. Litig.,* No. CV-15-00163-TUC-DCB, 2017 WL 5514690, at *4 (D. Ariz. May 8, 2017) (fee of 33 1/3% awarded), *Wood*, 2009 WL 10673479, at *5 (fee of 30% of settlement fund "well within the range routinely approved

in such cases."). The basis of Lead Counsel's fee and expense request will be detailed in their upcoming motion requesting fees and expenses.

### D. Settlement Class Members Are Treated Equitably Relative to One Another

The Plan of Allocation, drafted with the assistance of Lead Plaintiffs' damages expert, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible claimants and treats all Settlement Class Members equitably, as required by Rule 23(e)(2)(D). Each Authorized Claimant, including Lead Plaintiffs, will receive a distribution pursuant to the Plan, and Lead Plaintiffs will be subject to the same formula for distribution of the Settlement as other class members. *See Ciuffitelli v. Deloitte & Touche LLP*, No. 16 cv 00580, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) ("[t]he Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all Class Members and Class Representatives equally in that they will receive a *pro rata* distribution based [sic] of the Settlement Fund based on their net losses").

## III.   PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS

As part of the Settlement, Lead Plaintiffs respectfully request that the Court preliminarily certify the proposed Settlement Class (as defined in ¶1(hh) of the Stipulation).

### A.   The Settlement Class Meets the Requirements of Rule 23(a)

#### 1.   Rule 23(a): Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. In securities litigation, courts regularly find the numerosity requirement satisfied with respect to purchasers of nationally traded securities. *See Howell v. JBI, Inc.*, 298 F.R.D. 649, 654-55 (D. Nev. 2014) ("in securities cases, when millions of shares are traded during the proposed class period, a court may infer that the numerosity requirement is satisfied"). Here, throughout the Class Period, LifeLock common stock traded actively on the New York Stock Exchange ("NYSE") under the ticker symbol "LOCK." During the

Class Period, there were approximately 92 million to 95 million shares of LifeLock common stock outstanding. *See* Complaint ¶182. These shares were purchased by thousands of investors, making joinder impracticable.

### 2.   Rule 23(a)(2):  Questions of Law or Fact Are Common

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit construes this requirement "permissively," and has stated that that "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Securities fraud cases have long been found to satisfy the commonality requirement. *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) ("The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the 'common question' requirement."). In this case, the central questions of whether Defendants' statements regarding the real-time nature of LifeLock's identity theft alerts were false and misleading, and whether Defendants acted with the requisite mental state, are the same for all class members.

### 3.   Rule 23(a)(3): Lead Plaintiffs' Claims Are Typical

Rule 23(a)(3) is satisfied where the claims of the proposed class representatives arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based on the same legal theory. *In re Comput. Memories Sec. Litig.*, 111 F.R.D. 675, 680 (N.D. Cal. 1986). Rule 23(a)(3) does not require plaintiffs to show that their claims are identical on every issue to those of the class, but merely that significant common questions exist. *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005). Differences in the amount of damages, the size or manner of purchase, type of purchase, and even the specific documents influencing the purchase will not render the claim atypical in most securities actions. *See Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 WL 2151838, at *4 (D. Ariz. July 17, 2009).

Here, Lead Plaintiffs' claims are typical of those of the Settlement Class. Like other class members, Lead Plaintiffs purchased the publicly traded common stock of LifeLock during the Class Period, and claim to have suffered damages.

### 4.  Rule 23(a)(4):  The Lead Plaintiffs Are Adequate Representatives

Rule 23(a)(4) is satisfied if "the representative Parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). Here, as mentioned above, Lead Plaintiffs are sophisticated institutional investors that have and will continue to represent the interests of the Settlement Class fairly and adequately. There is no antagonism or conflict of interest between Lead Plaintiffs and the proposed Settlement Class. Lead Counsel also have extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States. Lead Counsel are well qualified and able to conduct the Action, and have ably and effectively represented Lead Plaintiffs and the proposed Settlement Class throughout the Action.[5]

### B.  The Settlement Class Meets the Requirements of Rule 23(b)(3) – Predominance and Superiority

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance requirement is "readily met" in securities class actions. *Id* at 625. Here, common questions of law and fact predominate over individual questions because Defendants' alleged fraudulent statements and omissions affected all Settlement

---

[5]     Accordingly, Lead Counsel satisfy the Class Counsel requirements of Rule 23(g) and have already been approved by the Court to represent the class pursuant to 15 U.S.C.§ 78u-4(a)(3)(B)(v). *See* ECF. No. 31.

Class Members in the same manner (*i.e.*, through public statements made to the market and documents publicly filed with the SEC).

Moreover, class-wide reliance is established in this Action through the application of *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims asserted against Defendants are predicated upon omissions of material fact which there was a duty to disclose, or alternatively the "fraud-on-the-market" presumption of reliance in *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988). Application of *Affiliated Ute* or *Basic* dispenses with the requirement that each Settlement Class Member prove individual reliance on Defendants' alleged misstatements and/or omissions. *See id.* Here, where LifeLock's common stock is traded on the NYSE, a national securities exchange, and was followed by numerous securities analysts and traded at regular substantial volumes, there is sufficient evidence of market efficiency. *See* Complaint ¶203.

Further, resolution of this case through a class action is far superior to litigating (and settling) thousands of individual cases where the expense for a single investor would likely exceed its losses. *See McPhail,* 247 F.R.D. at 615 ("class action is the superior method for fair and efficient adjudication" because individual suits would "'clog [ ] the federal courts with innumerable individual suits litigating the same issues repeatedly,'") (alteration in original).

## IV.   NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE PSLRA REQUIREMENTS

Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Notice must describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

Lead Counsel proposes to provide Settlement Class Members notice by: (i) individual first-class mailing of the long-form Notice, addressed to all Class Members who can reasonably be identified and located, using information provided by LifeLock's

transfer agent, as well as information provided by third party banks, brokers, and other nominees about their customers who may have eligible purchases; (ii) publication of the Summary Notice in *Investor's Business Daily*; and (iii) dissemination of the Summary Notice on the internet using *PR Newswire*. *See In re HP Sec. Litig.*, No. 12-cv-05980-CRB, 2015 WL 4477936, at *2 (N.D. Cal. July 20, 2015) (finding the procedures for notice, including mailing individual notice and publication notice satisfy Rule 23, the PSLRA, and constitute the best notice practicable). The Notice will also be accessible on the Settlement website and Lead Counsel's websites. This proposed notice program is the "gold standard" in securities cases because of the availability of name and address data for potential class members from third-party banks, brokers, and nominees.

In addition to the proposed methods of providing notice, the form and substance of the notice program are also sufficient. The proposed forms of notice describe the terms of the Settlement; the considerations that caused Lead Plaintiffs and Lead Counsel to conclude that the Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and expenses that may be sought; the procedure for requesting exclusion from the Settlement Class, objecting, and submitting claims; the proposed Plan of Allocation; and the date and place of the Settlement Hearing.

The long-form Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages that would be recoverable by Lead Plaintiffs; (iii) that Lead Counsel intend to make an application for an award of attorneys' fees and expenses (including the amount of such fees and expenses determined on an average per share basis); (iv) the name, telephone number, and address of a representative of Lead Counsel who will be available to answer

1  questions; and (v) the reasons why the Parties are proposing the Settlement. *See* 15 U.S.C.

2  § 78u-4(a)(7)(A)-(F).[6]

3       In connection with preliminary approval of the Settlement, the Court must set a

4  Settlement Hearing date, dates for mailing the Notice and publication of the Summary

5  Notice, and deadlines for requesting exclusion from the Settlement Class, objecting, filing

6  motions in support of final approval and attorneys' fees and expenses, and submission of

7  Claim Forms. Lead Plaintiffs propose the schedule attached as Exhibit 6 to the Villegas

8  Declaration, which summarizes the deadlines in the proposed Preliminary Approval Order.

9  The hearing date is the only date that the Court must schedule.

10  **<u>CONCLUSION</u>**

11       For the foregoing reasons, Lead Plaintiffs respectfully request that the Court issue

12  an order substantially in the form of the proposed Preliminary Approval Order:

13  (i) preliminarily approving the Settlement; (ii) holding that the manner and forms of notice

14  satisfy due process and provide the best notice practicable under the circumstances, and

15  ordering that notice be provided to the Settlement Class; (iii) setting a date for the

16  Settlement Hearing; (iv) appointing JND as Claims Administrator; (v) preliminarily

17  certifying the Settlement Class; and (vi) granting such other and further relief as may be

18  required.

19
20  Dated:  April 3, 2020

                                            **LABATON SUCHAROW LLP**

21                                            */s/ Carol C. Villegas*

22                                            CAROL C. VILLEGAS (*pro hac vice*)
                                          MARISA N. DEMATO (*pro hac vice*)

23                                            JAMES T. CHRISTIE (*pro hac vice*)
                                          140 Broadway

24                                            New York, NY 10005
                                          Telephone:  (212) 907-0700

25                                            Facsimile:  (212) 818-0477

26
27  [6]     Lead Plaintiffs also request that the Court appoint JND as the Claims Administrator

28  to provide all notices approved by the Court to Settlement Class Members, to process
Claim Forms, and to administer the Settlement. *See* Exhibit 5.

cvillegas@labaton.com
ndemato@labaton.com
jchristie@labaton.com

**BERNSTEIN LIEBHARD LLP**
STANLEY D. BERNSTEIN (*pro hac vice*)
MICHAEL S. BIGIN (*pro hac vice*)
JOSEPH R. SEIDMAN, JR. (*pro hac vice*)
10 East 40th Street
New York, NY 10016
Telephone:  (212) 779-1414
Facsimile:   (212) 779-3218

bernstein@bernlieb.com
bigin@bernlieb.com
seidman@bernlieb.com

*Lead Counsel for Lead Plaintiffs and the Class*