1  Kimberly C. Page (AZ # 022631)
   BONNETT, FAIRBOURN, FRIEDMAN
2  & BALINT, P.C.
   2325 E. Camelback Road, Suite 300
3  Phoenix, AZ 85016
   Telephone:    (602) 274-1100
4  Facsimile:    (602) 274-1199
   Email: kpage@bffb.com
5
   *Liaison Counsel for Lead Plaintiffs the Oklahoma Police Pension and Retirement*
6  *System and the Oklahoma Firefighters Pension and Retirement System and*
   *Liaison Counsel for the Proposed Class*
7
   *(Lead Counsel for Lead Plaintiffs Oklahoma Police Pension and Retirement*
8  *System and Oklahoma Firefighters Pension and Retirement System*
   *and for the Proposed Class Appear on the Signature Page)*
9

10                    **UNITED STATES DISTRICT COURT**

11                         **DISTRICT OF ARIZONA**

12
   Miguel Avila, on Behalf of Himself and All          CASE NO. 2:15-cv-01398-SRB
13 Others Similarly Situated,
                                                        CLASS ACTION
14                               Plaintiffs,
15
            v.                                          **LEAD PLAINTIFFS' MOTION**
16                                                      **FOR FINAL APPROVAL OF**
                                                        **CLASS ACTION**
17 LifeLock Inc., Todd Davis, Chris G.                  **SETTLEMENT AND PLAN OF**
   Power, and Hilary A. Schneider,                      **ALLOCATION AND**
18                                                      **MEMORANDUM OF POINTS**
                                                        **AND AUTHORITIES IN**
19                               Defendants.            **SUPPORT**

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

MOTION ......................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 1

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ................................................................................................................. 2

I.   STANDARDS FOR APPROVAL OF THE SETTLEMENT ................................. 2

A.   Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class ............................................................................. 4

B.   The Settlement Was Negotiated at Arm's-Length ......................................... 6

C.   The Relief Provided by the Settlement Is Adequate in Light of Risks of Further Litigation ...................................................................... 7

1.   Risks in Proving Loss Causation and Damages ................................. 8

2.   Risks in Proving Falsity and Scienter ................................................. 9

3.   The Effective Process for Distributing Relief ................................. 10

4.   The Anticipated Attorney's Fees and Expenses Are Reasonable .... 11

5.   The Relief Provided in the Settlement Is Adequate Taking Into Account all Agreements Related to the Settlement .......................... 12

D.   Settlement Class Members Are Treated Equitably Relative to One Another and the Proposed Plan of Allocation Should Be Approved ......... 13

E.   Reaction of the Settlement Class to Date ..................................... 14

II.  THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS .......................................................................................................... 16

CONCLUSION ............................................................................................................. 16

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*In re Apollo Grp. Inc. Sec. Litig.*,
    No. 04-2147, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ............................................ 6

6
*In re Banc of California Sec. Litig.*,
7
    No. SACV17-00118, 2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ................................ 6

8
*Churchill Vill. L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004).......................................................................................... 3
9

10
*Ciuffitelli v. Deloitte & Touche LLP*,
    No. 16CV00580, 2019 WL 1441634 (D. Or. Mar. 19, 2019) ....................................... 13

11
*Class Plaintiffs v. City of Seattle*,
12
    955 F.2d 1268 (9th Cir. 1992)....................................................................................... 13

13
*In re Delphi Corp. Sec. Derivative & ERISA Litig.*,
14
    248 F.R.D. 483 (E.D. Mich. 2008) ................................................................................. 6

15
*Destefano v. Zynga Inc.*,
    No. 12-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .................................. 5
16

17
*Eisen v. Porsche Cars N. Am., Inc.*,
    No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006 (C.D. Cal. Jan. 30,
18
    2014) ............................................................................................................................... 5

19
*In re Extreme Networks, Inc. Sec. Litig.*,
20
    No. 15-CV-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019)........................ 12

21
*Garner v. State Farm Mut. Auto Ins. Co.*,
    No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22,
22
    2010) ............................................................................................................................... 2

23
*Hefler v. Wells Fargo & Co.*,
24
    No. 16-CV-05479, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)................................. 6

25
*In re Heritage Bond Litig.*,
    No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005)................................. 13
26

27
*In re Linkedin User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) ................................................................................. 10

28

LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMO. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 2:15-cv-01398-SRB

ii

*McPhail v. First Command Fin. Planning, Inc.*,
No. 05-cv-179-IEG-JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009)........................ 7

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)............................................................................... 3

*Mendoza v. Tucson Sch. Dist. No. 1*,
623 F.2d 1338 (9th Cir. 1980)............................................................................ 15

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010)............................................................................. 15

*Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................... 6

*In re NVIDIA Corp. Derivative Litig.*,
No. 06-cv-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22,
2008) ........................................................................................................... 5

*Officers for Justice v. Civil Serv. Comm'r*,
688 F.2d 615 (9th Cir. 1982)............................................................................. 4

*Oklahoma Police Pension and Ret. Sys. v. LifeLock, Inc.*,
780 F. App'x 480 (9th Cir. 2019) ...................................................................... 14

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................... 7, 13

*Redwen v. Sino Clean Energy, Inc.*,
No. 11-3936, 2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013).................. 5, 13

*Rodriguez v. W. Publ'g. Corp.*
 563 F.3d 948, 965 (9th Cir. 2009)...................................................................... 5

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008)........................................................................... 2

*Torrisi v. Tucson Elec. Power Co.*
8 F.3d 1370 (9th Cir. 1993)............................................................................. 10

*Wood v. Ionatron, Inc.*,
No. CV 06-354-TUC-CKJ, 2009 WL 10673479 (D. Ariz. Sept. 28, 2009)............. 2, 11

**Rules**

Fed. R. Civ. P. 23 ...................................................................................... 1, 3, 13

LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMO. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 2:15-cv-01398-SRB

iii

Fed. R. Civ. P.  23(a) ................................................................................................. 16

Fed. R. Civ. P. 23(b)(3) ............................................................................................ 16

Fed. R. Civ. P. 23(e) .................................................................................................. 3

Fed. R. Civ. P. 23(e)(2)........................................................................................... 2, 3

Fed. R. Civ. P. 23(e)(3)............................................................................................ 12

Fed. R. Civ. P. 23(e)(2)(C)(iv) ............................................................................... 12

Fed. R. Civ. P. 23(e)(2)(D)...................................................................................... 13

Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memo. of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB

iv

1

**<u>MOTION</u>**

2   PLEASE TAKE NOTICE THAT on July 21, 2020 at 10:00 am, Lead Plaintiffs

3   Oklahoma Police Pension and Retirement System and Oklahoma Firefighters Pension and

4   Retirement System (collectively, "Lead Plaintiffs"), on behalf of themselves and the

5   proposed Settlement Class, will move this Court, for an Order, pursuant to Rule 23 of the

6   Federal Rules of Civil Procedure: (i) granting final approval of the proposed class action

7   Settlement;  and (ii) approving the proposed Plan of Allocation for the net proceeds of the

8   Settlement.

9   This motion is based on the accompanying Memorandum of Points and Authorities

10  and the Joint Declaration of Carol C. Villegas and Michael S. Bigin in Support of (I) Lead

11  Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation

12  and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of

13  Expenses, dated June 16, 2020, with annexed exhibits, filed herewith (the "Joint

14  Declaration" or "Joint Decl.").

15  Proposed Orders will be submitted with Lead Plaintiffs' reply submission, no later

16  than July 14, 2020, after the deadline for objecting and seeking exclusion has passed.[1]

17  **<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

18  **<u>PRELIMINARY STATEMENT</u>**

19  Lead Plaintiffs respectfully submit that the proposed Settlement is a very favorable

20  result for the Settlement Class, and should be approved by the Court.  The Settlement

21  provides a recovery of $20,000,000 in cash to resolve claims against Defendants LifeLock,

22  Inc. ("LifeLock," or "the Company"), Todd Davis ("Davis"), Chris Power ("Power"), and

23

24  _____

25  [1]   All capitalized terms not otherwise defined herein have the same meaning as those
in the Stipulation and Agreement of Settlement, dated as of March 27, 2020 (the
"Stipulation"), previously filed with the Court. ECF No. 137-2.  All exhibits referenced

26  below are attached to the Joint Declaration.  The Joint Declaration contains a detailed
description of the allegations and claims, the procedural history of the Action, the risks

27  faced by the Settlement Class in pursuing litigation, and the efforts that led to a settlement,

28  among other matters.

Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memo. of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB                                                                        1

1    Hilary Schneider ("Schneider").   The Settlement warrants approval given that it is the

2    result of vigorous arm's-length negotiations by experienced counsel overseen by a well-

3    respected Mediator, represents a very favorable recovery that falls well within the range of

4    approval, and meets all of the approval factors required by Fed. R. Civ. P. 23(e)(2).

5        Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval

6    of the Settlement.   In addition, the Plan of Allocation, which was developed with the

7    assistance of Lead Plaintiffs' consulting damages expert, is a fair and reasonable method

8    for distributing the Net Settlement Fund to eligible claimants and should also be approved

9    by the Court.

10                                  **ARGUMENT**

11   **I.     STANDARDS FOR APPROVAL OF THE SETTLEMENT**

12       As a matter of public policy, settlement is strongly favored, "particularly where

13   complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095,

14   1101 (9th Cir. 2008); *see also Wood v. Ionatron, Inc.*, No. CV 06-354-TUC-CKJ, 2009

15   WL 10673479, at *2 (D. Ariz. Sept. 28, 2009) ("the extraordinary amount of judicial and

16   private resources consumed by massive class action litigation elevates the general policy of

17   encouraging settlements to an overriding public interest").[2]   Class action suits readily lend

18   themselves to compromise because of the difficulties of proof, the uncertainties of the

19   outcome, and the typical length of the litigation.   Settlements of complex cases, such as

20   this one, greatly contribute to the efficient utilization of scarce judicial resources and

21   achieve the speedy resolution of claims.   *See, e.g.*, *Garner v. State Farm Mut. Auto Ins.*

22   *Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010)

23   ("Settlement avoids the complexity, delay, risk and expense of continuing with the

24   litigation and will produce a prompt, certain and substantial recovery for the Plaintiff

25   class.").

26

27

28       [2]   All internal quotations and citations are omitted unless otherwise noted.

Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memo. of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB                                                    2

Federal Rule of Civil Procedure 23(e) requires court approval of any class action settlement. The standard for determining whether to grant final approval to a class action settlement is whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Under the Federal Rules, a court reviews a settlement using four main factors. *Id.*[3] They are whether:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        i.    the costs, risks, and delay of trial and appeal;

        ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        iii.    the terms of any proposed award of attorneys' fees, including timing of payment; and

        iv.    any agreement required to be identified under Rule 23(e)(3); and

    (D)    the proposal treats class members equitably relative to each other.

The determination of whether a settlement is fair, reasonable, and adequate is committed to the Court's sound discretion. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) ("Review of the district court's decision to approve a class action

---

[3]   Fed. R. Civ. P. 23(e)(2) is intended to "direct[] the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23 Committee Notes on Rules – 2018 Amendment at Subdivision (e)(2).

These standards largely overlap with the pre-amendment factors considered within the Ninth Circuit: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *See Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004).

LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND MEMO. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF CASE NO. 2:15-CV-01398-SRB

3

1    settlement is extremely limited.").  The Court need not reach conclusions about the merits

2    of the case, in part because the Court will be called upon to decide the merits if the action

3    proceeds.  *See Officers for Justice v. Civil Serv. Comm'r*, 688 F.2d 615, 625 (9th Cir.

4    1982) ("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for

5    trial on the merits. . . .  [I]t is the very uncertainty of outcome in litigation and avoidance of

6    wasteful and expensive litigation that induce consensual settlements.").

7        For the reasons discussed herein, in the Motion for Preliminary Approval of the

8    Settlement, and in the Joint Declaration, the proposed Settlement meets the criteria for

9    final approval.

10        **A.    Lead Plaintiffs and Lead Counsel Have Adequately
                   Represented the Settlement Class**

11

12        Oklahoma Police Pension and Retirement System and the Oklahoma Firefighters

13    Pension and Retirement System were appointed Lead Plaintiffs after a finding that they

14    were the "most adequate plaintiffs" to represent the Settlement Class, *see* ECF No. 31, and

15    nothing has occurred since that would alter that finding.  Lead Plaintiffs are sophisticated

16    institutional investors and each has substantial experience leading numerous securities

17    class actions.  Both have been involved throughout the litigation and they support approval

18    of the Settlement.  *See* Exs. 1 and 2.  Throughout the Action, Lead Plaintiffs also benefited

19    from the advice of knowledgeable counsel well-versed in shareholder class action

20    litigation and securities fraud cases.  Bernstein Liebhard LLP and Labaton Sucharow LLP

21    are among the most experienced and skilled firms in the securities litigation field, and each

22    has a long and successful track record in such cases. *See* Exs. 5-D and 6-C, firm resumes.

23    Both firms have served as lead counsel in a number of high profile and influential cases.

24    *Id*.

25        Lead Counsel have vigorously litigated the Action since its inception.   Lead

26    Counsel, among other things: (i) conducted a thorough investigation that included the

27    review of publicly available information regarding the Company and interviews of former

28    employees and third parties; (ii) prepared two amended complaints; (iii) opposed two

Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memo. of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB                                                                    4

motions to dismiss; (iv) successfully argued an appeal to the Ninth Circuit to restore the claims; (v) conducted accelerated discovery; (vi) analyzed Defendants' mediation statements and exhibits; (vii) analyzed documents produced by Defendants; and (viii) consulted with experts concerning regulatory issues, damages and loss causation.

Prior to, and over the course of the litigation, Lead Counsel explored the strengths and weaknesses of the claims and defenses and developed a deep understanding of the merits of the claims.  Lead Plaintiffs and Lead Counsel had a firm understanding of the likelihood of success and the potential recovery at trial at the time the Settlement was entered into.  *See, e.g., Destefano v. Zynga Inc.,* No. 12-04007-JSC, 2016 WL 537946, at *12 (N.D. Cal. Feb. 11, 2016) (noting that the extent of discovery completed and stage of proceedings supports final approval of settlement where plaintiffs engaged in a pre-filing investigation, opposed defendants' motions to dismiss and a motion for reconsideration, worked with consultants, propounded and responded to some discovery, and prepared and participated in mediation session); *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement where record established that "all counsel had ample information and opportunity to assess the strengths and weaknesses of their claims and defenses"); *Redwen v. Sino Clean Energy, Inc.*, No. 11-3936, 2013 U.S. Dist. LEXIS 100275, at *22 (C.D. Cal. July 9, 2013) (settlement approved when, as here, "the parties have spent a significant amount of time considering the issues and facts in this case and are in a position to determine whether settlement is a viable alternative").

After this process, Lead Counsel and Lead Plaintiffs concluded that this is a fair and reasonable settlement.  As the Ninth Circuit observed in *Rodriguez v. West Publishing Corporation,* Lead Counsel's informed opinion supports approval as "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action.  *Rodriguez*, 563 F.3d 948, 965 (9th Cir. 2009); *see also In re NVIDIA Corp. Derivative Litig.*, No. 06-cv-06110-SBA (JCS), 2008 WL 5382544, at *4 (N.D. Cal. Dec.

LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMO. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 2:15-CV-01398-SRB

5

22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement."); *Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004); ("'[g]reat weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."). Accordingly, Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class.

### B.     The Settlement Was Negotiated at Arm's-Length

Courts have long recognized that there is an initial presumption that a proposed settlement is fair and reasonable when it is the "product of arms-length negotiations." *In re Apollo Grp. Inc. Sec. Litig.*, No. 04-2147, 2012 WL 1378677, at *2 (D. Ariz. Apr. 20, 2012) (noting that "there is no evidence that there has been anything other than a genuine arms-length negotiation in this case following mediation where the parties reached an agreement on the settlement"). The use of an experienced mediator is an "important factor" supporting a finding that this requirement is satisfied. *See In re Banc of California Sec. Litig.*, No. SACV17-00118, 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019).

Here, Lead Plaintiffs and Lead Counsel agreed to settle after rigorous lengthy litigation and through a mediation process overseen by a highly regarded and experienced mediator, Judge Phillips. *See, e.g., In re Delphi Corp. Sec. Derivative & ERISA Litig.,* 248 F.R.D. 483, 498 (E.D. Mich. 2008) (speaking of Judge Phillips, "the Court and the parties have had the added benefit of the insight and considerable talents of a former federal judge who is one of the most prominent and highly skilled mediators of complex actions"); *see also Hefler v. Wells Fargo & Co.*, No. 16-CV-05479, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) (finding that settlement was the product of arms-length negotiation where, as here, mediation was conducted by retired District Court Judge Layn Phillips). It is respectfully submitted that this factor supports approval of the Settlement.

LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMO. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 2:15-cv-01398-SRB

6

C.   **The Relief Provided by the Settlement Is Adequate in Light of Risks of Further Litigation**

The $20 million Settlement Amount presents a very favorable recovery based on several metrics.  First, it is almost twice the median settlement value in securities class action settlements in 2019, which was reported by Cornerstone Research to be $11.5 million.  *See* Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements – 2019 Review and Analysis at 1 (Cornerstone Research 2020), Ex. 4.  During the period from 1996 to 2018, essentially since the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the median settlement value of securities class actions has been $8.8 million, less than two-times the Settlement Amount.  *Id.*

Second, the Settlement provides a favorable recovery as a proportion of estimated aggregate damages, were the case to continue.  In that regard, the Settlement represents approximately 5% of the $416 million in maximum estimated damages, and up to 10% of damages when factoring in the real risk that Lead Plaintiffs would need to "disaggregate," or parse out, non-fraud related stock price movement and account for an October 29, 2015 stock price recovery.  Joint Decl. at ¶¶98-99.  Courts have regularly approved settlements that recovered a similar, or smaller, percentage of maximum damages.  *See, e.g., McPhail v. First Command Fin. Planning, Inc.,* No. 05-cv-179-IEG-JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering 7% of estimated damages was fair and adequate); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").  Cornerstone Research has also tracked the median proportion of Section 10(b) class action recoveries since 2010. Cornerstone uses what it calls a "simplified tiered damages" approach for comparison purposes, *see* Ex. 4 Endnote 6, and the recovery here exceeds Cornerstone's estimated median recovery of 4.6%.  *See* Ex. 4 at 7, Figure 6.

Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Memo. of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB

7

Moreover, although Lead Plaintiffs believe that the case against Defendants is strong, that confidence must be tempered by the fact that the Settlement is certain and that every case involves significant risk of no recovery, particularly in a complex case such as this one, which was twice dismissed by the Court.  To prevail, Lead Plaintiffs would have confronted a number of legal and factual challenges, while trying to prove difficult securities claims.

### 1.      Risks in Proving Loss Causation and Damages

Although Lead Plaintiffs' damages expert estimated that the maximum aggregate damages for this Action could be approximately $416 million, this case involved allegations that arguably required material reductions to damages if Lead Plaintiffs had to "disaggregate" the price impact of multiple revelations.  *See* Joint Decl. at ¶¶73-83.  The Complaint originally alleged that three revelations from the FTC contempt proceedings caused the stock price to drop: 1) that alerts were not near real-time; 2) there was a lack of PCI compliance; and 3) LifeLock understated the severity of the FTC investigation.  *Id*. at ¶73.  However, consistent with the Ninth Circuit's decision affirming in part and reversing in part the Court's Order granting Defendants' second motion to dismiss for failure to adequately plead scienter as to statements related to the Company's alert services and PCI-DSS compliance, and for failure to adequately plead falsity as to statements related to the Federal Trade Commission investigation of the Company, liability could only attach to the allegedly false statements concerning alerts.  *Id*.

Accordingly, Defendants would likely argue that the class could only recover for the decrease in stock price related to the alerts statements.  *Id*.  How a jury would determine the value of the alerts statements versus the value of other non-fraudulent revelations is unknown and presented significant challenges.  But even assuming a disaggregation model where 50% of the abnormal return on July 21, 2015, the end of the Class Period, was disaggregated to account for the value of the alerts statements,

LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMO. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 2:15-CV-01398-SRB

8

1   recoverable damages would decrease to $249 million from $416 million (which increases

2   the value of the Settlement to an 8% recovery for the Settlement Class). *Id*. at ¶79.

3        In addition to needing disaggregation to account for other causes of loss,

4   Defendants would likely argue that most of the price drop was speculation by the market

5   and did not reflect the value of the alerts statements. *Id*. at ¶80.  They would likely argue

6   that the overreaction is proved by a bounce-back in LifeLock's stock price after its October

7   29, 2015 announcement that its settlement with the FTC was within a range originally

8   communicated to investors prior to July 21, 2015.   *Id*.   While Lead Plaintiffs do not

9   concede that an offset of damages is required, such an offset could further reduce

10   recoverable damages, by over half the maximum damages, to $199 million, making the

11   $20 million Settlement a 10% recovery for the Settlement Class. *Id*.

12        Defendants would also likely argue that Lead Plaintiffs cannot establish that any

13   recoverable losses were caused by the two alleged corrective disclosures. *Id*. at ¶¶74-75.

14   Defendants would argue that the first corrective disclosure on February 10, 2015 merely

15   announced that LifeLock was taking a reserve for a previously disclosed FTC investigation

16   and this announcement contained no information—much less new information—regarding

17   LifeLock's alerts. *Id*. at ¶74.   Defendants would also argue that the second alleged

18   corrective disclosure on July 21, 2015, the FTC's announcement that it was initiating

19   contempt proceedings against LifeLock, revealed only *potential* wrongdoing—there was

20   no subsequent adjudication or admission that confirmed *any* wrongdoing occurred. *Id*. at

21   ¶75.  Additionally, if Lead Plaintiffs were unable to develop a scientifically reasonable

22   method for disaggregating losses related to the alerts statements, then Lead Plaintiffs

23   would be unable to prove an element of their claims and none of the class members could

24   recover for their losses.

25               **2.**     **Risks in Proving Falsity and Scienter**

26        Regarding falsity, Defendants would have likely argued that LifeLock never stated

27   that *all* of its alerts were near real-time.  To the contrary, Defendants would argue that

28

Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memo. of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB

9

1   LifeLock repeatedly and plainly told investors that its alerts were subject to limitations.  *Id.*

2   at ¶66.  With respect to scienter, Defendants would argue that Lead Plaintiffs could not

3   prove that any Defendant knowingly made statements with the required intent to defraud

4   or with severe recklessness, especially because they believed they adequately told the

5   market that the various alerts they provided came with obvious and disclosed limitations.

6   *Id.* at ¶71.

7          These risks aside, additional discovery would have been protracted.  Defendants

8   would likely have sought summary judgment and there was no guarantee that the proposed

9   class would prevail in Defendants' continuous challenges and, even if they did, how the

10  Court's rulings would affect damages or how the case would be presented to a jury.  A trial

11  of Lead Plaintiffs' claims would inevitably be long and complex, and even a favorable

12  verdict would undoubtedly spur a lengthy post-trial and appellate process.  *See, e.g.,*

13  *Torrisi*, 8 F.3d at 1376 ("the cost, complexity and time of fully litigating the case all

14  suggest that this settlement was fair").  "Generally, unless the settlement is clearly

15  inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

16  with uncertain results."  *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal.

17  2015).  The Settlement provides the Settlement Class, whose claims have been pending

18  since 2015, with a prompt and substantial tangible recovery, without the considerable risk,

19  expense, and delay of litigating to completion.

20          **3.      The Effective Process for Distributing Relief**

21          The Settlement will be distributed with the assistance of an experienced claims

22  administrator.  The Claims Administrator will employ a well-established protocol for the

23  processing of claims in a securities class action.  Potential class members will submit,

24  either by mail or online using the Settlement website, the Court-approved Claim Form.

25  Based on the trade information provided by claimants, the Claims Administrator will

26  determine each claimant's eligibility to participate and calculate their respective

27  "Recognized Claim" based on the Court-approved Plan of Allocation.  *See* Stipulation at

28

LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMO. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 2:15-CV-01398-SRB

10

¶24. Lead Plaintiffs' claims will be reviewed in the same manner.  Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest rejection.  Any claim disputes that cannot be resolved will be presented to the Court for a determination.

After the Settlement reaches its Effective Date (Stipulation at ¶39) and the passing of all applicable deadlines, Authorized Claimants will be issued checks.  After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, the Claims Administrator will, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, redistribute the balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion.   Once it is no longer feasible or economical to make further distributions, any balance that still remains in the Net Settlement Fund after re-distribution(s) and after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, will be contributed to a non-sectarian, not-for-profit charitable organization serving the public interest designated by Lead Plaintiffs and approved by the Court.  *See* Stipulation at ¶27.

### 4.      The Anticipated Attorney's Fees and Expenses Are Reasonable

As set forth in the accompanying motion, Lead Counsel is requesting attorneys' fees of 30% of the Settlement Fund, litigation expenses of $265,124.33, and awards totaling $4,320 to Lead Plaintiffs pursuant to the PSLRA.  A fee request of 30%, while slightly above the 25% "benchmark" within the Ninth Circuit, is consistent with other settlements approved in the Ninth Circuit, and is warranted given the work done in the case.  *See, e.g., Wood v. Ionatron*, Inc., No. CV 06-354-TUC-CKJ, 2009 WL 10673479, at *5 (D. Ariz. Sept. 28, 2009) (fee of 30% of settlement fund "well within the range

LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMO. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 2:15-CV-01398-SRB

11

routinely approved in such cases"). The Settlement is not contingent upon any particular award to Lead Counsel, which is within the discretion of the Court.

### 5.  The Relief Provided in the Settlement Is Adequate Taking Into Account all Agreements Related to the Settlement

The relief provided to the Settlement Class is also adequate under Rule 23(e)(2)(C)(iv) given that the agreements required to be identified under Rule 23(e)(3) treat the Settlement Class fairly.  *See In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding that the absence of clear sailing fee provisions and no reversion of funds to the defendants support approving the settlement).

Here, on March 4, 2020, the Parties entered into a memorandum of understanding concerning their agreement in principle, which was formally memorialized in the Stipulation, dated as of March 27, 2020.  Also as of March 27, 2020, they entered into a confidential Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement").  The Supplemental Agreement sets forth the conditions under which LifeLock has the discretion to terminate the Settlement if requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold.  As is standard in securities settlements, the Supplemental Agreement has been kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement.  Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.

The Supplemental Agreement, Stipulation, and memorandum of understanding are the only agreements concerning the Settlement entered into by the Parties.  The Settlement does not contain a reversion to Defendants, and the Settlement is not contingent on any particular fee award to Lead Counsel.  All the agreements treat the Settlement Class fairly and support a finding that the relief provided by the Settlement is adequate.

Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Memo. of Points and Authorities In Support Thereof Case No. 2:15-cv-01398-SRB

12

### D.    Settlement Class Members Are Treated Equitably Relative to One Another and the Proposed Plan of Allocation Should Be Approved

The Plan of Allocation, drafted with the assistance of Lead Plaintiffs' damages expert, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible claimants and treats all Settlement Class Members equitably, as required by Rule 23(e)(2)(D).  Each Authorized Claimant, including Lead Plaintiffs, will receive a distribution pursuant to the Plan, and Lead Plaintiffs will be subject to the same formula for distribution of the Settlement as other class members.  *See Ciuffitelli v. Deloitte & Touche LLP*, No. 16CV00580, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) ("[t]he Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all Class Members and Class Representatives equally in that they will receive a pro rata distribution based [sic] of the Settlement Fund based on their net losses").

The standard for approval of a plan of allocation in a class action under Rule 23 of the Federal Rules of Civil Procedure is the same as the standard applicable to the settlement as a whole – the plan must be fair, reasonable, and adequate.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *Omnivision*, 559 F. Supp. 2d at 1045. An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel.  *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005).  "[A] plan of allocation . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Redwen,* 2013 U.S. Dist. LEXIS 100275, at *29.

Here, Lead Plaintiffs' consulting damages expert prepared the Plan of Allocation after careful consideration of Lead Plaintiffs' theories of liability and damages under the Exchange Act.  The Plan provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on "Recognized Claim" formulas tied to

LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMO. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 2:15-CV-01398-SRB

13

liability and damages.  These formulas consider the amount of alleged artificial inflation (or deflation for put options) in the prices of LifeLock publicly traded common stock and call options, as quantified by the consulting damages expert.  Losses arising from purchases/acquisitions on the first day of the Class Period, July 31, 2014, are discounted by 95% given the unique considerations on that date.  Namely, the class period in the Complaint originally began on July 30, 2014.  However, the Ninth Circuit held that the alleged misstatement on July 30, 2014, which occurred during after-hours trading and allegedly impacted trading prices on July 31, 2014, was not actionable as pled (*see Oklahoma Police Pension and Retirement System v. LifeLock, Inc.*, 780 F. App'x 480, 483 n.2 (9th Cir. 2019)).  Settlement Class members are eligible to receive 5% of the Recognized Loss Amount for their purchases made on July 31, 2014 to account for the risk of Lead Plaintiffs being unable to re-plead and sustain the dismissed July 30, 2014 statement and the limited effect of the July 31, 2014 alleged misstatement on trading.

Individual claimants' recoveries will depend upon when during the Class Period they bought LifeLock securities, what type of securities they purchased, and whether and when they sold their securities.  Authorized Claimants will recover their proportional "pro rata" amount of the Net Settlement Fund based on their Recognized Loss, calculated under the Plan of Allocation using the transactional information provided by claimants in their claim forms.  As a result, the Plan of Allocation will result in a fair distribution of the available proceeds among Settlement Class Members who submit valid claims.  The Plan of Allocation was fully described in the Notice and, to date, there has been no objection to the proposed plan.  *See* Ex. 3-A at 12-18.

### E.    Reaction of the Settlement Class to Date

Pursuant to this Court's Preliminary Approval Order, the Notice and Claim Form were mailed to potential Settlement Class Members who could be identified with reasonable effort.  *See* Declaration of Luiggy Segura Regarding (A) Mailing of the Notice and Proof of Claim; (B) Publication of the Summary Notice; and (C) Report on Requests

Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memo. of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB

14

for Exclusion Received, Ex. 3 at ¶¶3-13.  The Summary Notice was published in *Investor's Business Daily* and transmitted over the internet using *PRNewswire* on May 4, 2020.  *Id*. at ¶14.  Additionally, the Stipulation, Notice, Claim Form, and Preliminary Approval Order were posted to the website dedicated to the Settlement (*id*. at ¶16), as well as Lead Counsel's websites.

The Notice advised the Settlement Class of, among other things, the terms of the Settlement, the Plan of Allocation, and the maximum amount of Lead Counsel's request for an award of attorneys' fees and expenses, as well as the procedures and deadlines for filing objections and requesting exclusion from the Settlement Class.  *See generally* Ex. 3-A.  The Notice also stated that the motions in support of approval of the Settlement and the request for attorneys' fees and expenses would be filed with the Court no later than June 16, 2020, and be available to the public through the Settlement website, Lead Counsel's websites, request to the Claims Administrator, the Clerk's Office, or PACER.  *See* Ex. 3-A at ¶¶49-51.

The Ninth Circuit has held that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980).  The Ninth Circuit has also ruled that the objection deadline should fall after motions in support of approval and attorneys' fees and expenses have been filed.  *See, e.g., In re Mercury Interactive Corp. Sec. Litig*., 618 F.3d 988 (9th Cir. 2010) (requiring that fee motion be made available to the class before the deadline for objecting to the fee).  Lead Plaintiffs respectfully submit that the notice program utilized here readily meets these standards.

To date, 44,954 Notice Packets have been mailed to potential Settlement Class Members and nominees.  Ex. 3 at ¶13.  While the objection/exclusion deadline – June 30, 2020 – has not yet passed, to date, no objections and no exclusion requests have been received.  *See* Joint Decl. at ¶62; Ex. 3 at ¶17.  The reaction to date supports approval of

LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMO. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 2:15-CV-01398-SRB

15

the Settlement and the proposed Plan of Allocation.  Lead Plaintiffs will address objections and requests for exclusion, if any, in their reply submission.

## II.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

The Court previously granted preliminary certification to the Settlement Class under Rules 23(a) and (b)(3).  *See* ECF No. 138 at 2-3.  Because nothing has occurred since then to cast doubt on the propriety of class certification for settlement purposes, and no objections to certification have been received to date, the Court should grant final class certification.

## <u>CONCLUSION</u>

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court:  (i) grant final approval of the Settlement; (ii) finally certify the Settlement Class, for settlement purposes only; and (iii) approve the proposed Plan of Allocation as fair, reasonable, and adequate.  Proposed orders will be submitted with Lead Plaintiffs' reply submissions, after the deadlines for objecting and seeking exclusion have passed.

Dated:  June 16, 2020

Respectfully submitted,

**LABATON SUCHAROW LLP**

*/s/ Carol C. Villegas*
CAROL C. VILLEGAS (*pro hac vice*)
MARISA N. DEMATO (*pro hac vice*)
JAMES T. CHRISTIE (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone:  (212) 907-0700
Facsimile:   (212) 818-0477

cvillegas@labaton.com
ndemato@labaton.com
jchristie@labaton.com

**BERNSTEIN LIEBHARD LLP**
STANLEY D. BERNSTEIN (*pro hac vice*)
MICHAEL S. BIGIN (*pro hac vice*)
JOSEPH R. SEIDMAN, JR. (*pro hac vice*)

LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMO. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 2:15-CV-01398-SRB

16

10 East 40th Street
New York, NY 10016
Telephone:  (212) 779-1414
Facsimile:   (212) 779-3218

bernstein@bernlieb.com
bigin@bernlieb.com
seidman@bernlieb.com

*Lead Counsel for Lead Plaintiffs and the Class*

Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Memo. of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I, Carol C. Villegas, hereby certify that a true copy of the foregoing document filed through the ECF system on June 16, 2020, will be electronically sent to the registered participants as identified on the Notice of Electronic Filing, and paper copies will also be sent to those indicated as non-registered participants.

*/s/ Carol C. Villegas*

CAROL C. VILLEGAS

LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND MEMO. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF CASE NO. 2:15-CV-01398-SRB

18