Kimberly C. Page (AZ # 022631)
BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone:    (602) 274-1100
Facsimile:    (602) 274-1199
Email: kpage@bffb.com

*Liaison Counsel for Lead Plaintiffs the Oklahoma Police Pension and Retirement
System and the Oklahoma Firefighters Pension and Retirement System and
Liaison Counsel for the Proposed Class*

*(Lead Counsel for Lead Plaintiffs Oklahoma Police Pension and Retirement
System and Oklahoma Firefighters Pension and Retirement System
and for the Proposed Class Appear on the Signature Page)*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Miguel Avila, on Behalf of Himself and All Others Similarly Situated,<br><br>                   Plaintiffs,<br><br>v.<br><br>LifeLock Inc., Todd Davis, Chris G. Power, and Hilary A. Schneider,<br><br>                   Defendants. | CASE NO. 2:15-cv-01398-SRB<br><br>CLASS ACTION<br><br>**LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................iii

MOTION ............................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 1

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT ..................................................................................................... 2

I.     AWARDING ATTORNEYS' FEES CALCULATED AS A
      REASONABLE PERCENTAGE OF THE COMMON FUND
      RECOVERED IS APPROPRIATE .......................................................... 2

      A.     Counsel Are Entitled to an Award of Attorneys' Fees from the
           Common Fund........................................................................... 2

      B.     A Reasonable Percentage of the Fund Recovered Is the Appropriate
           Method for Awarding Attorneys' Fees in Common Fund Cases.................. 3

II.    ANALYSIS UNDER THE PERCENTAGE METHOD AND THE
      *VIZCAINO* FACTORS JUSTIFY A 30% CONTINGENCY FEE AWARD
      IN THIS CASE.......................................................................................... 4

      A.     Lead Counsel Achieved a Very Favorable Result for the Settlement
           Class ......................................................................................... 6

      B.     Lead Counsel Successfully Navigated the Many Risks of this Case
           Over Nearly Five Years of Litigation Efforts ............................... 8

      C.     The Skill Required and Quality of Work Support the Requested Fee .......... 9

      D.     The Contingent Nature of the Case and the High Financial Burden
           Carried by Lead Counsel.......................................................... 11

      E.     A 30% Fee Award Is Comparable to Awards in Similar Cases.................. 13

      F.     The Requested Fee Is Reasonable Under a Lodestar Cross-Check
           Analysis ................................................................................... 14

      G.     The Settlement Class's Reaction to Date Supports the Fee Request .......... 15

III.   PLAINTIFFS' COUNSELS' EXPENSES ARE REASONABLE AND
      WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED.................... 16

IV.     LEAD PLAINTIFFS' REQUEST FOR AWARDS PURSUANT TO 15
        U.S.C. 78U-4(A)(4) ARE REASONABLE ........................................................ 16

CONCLUSION .......................................................................................................... 17

Lead Counsel's Motion for An Award of Attorneys' Fees and Payment of
Expenses and Memorandum of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Amkor Tech., Inc. Sec. Litig.*,
  No. 07-00278, 2009 WL 10708030 (D. Ariz. Nov. 19, 2009) ..................................... 3

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ................................................................................ 12

*In re Apollo Grp. Inc. Sec. Litig.*,
  No. CV 04-2147-PHX-JAT, 2012 WL 1378677 (D. Ariz. Apr. 20,
  2012) ........................................................................................................................ 5

*In re Audioeye, Inc., Sec. Litig.*,
  No. CV-15-00163-TUC-DCB, 2017 WL 5514690 (D. Ariz. May 8,
  2017) ...................................................................................................................... 13

*In re BankAtlantic Bancorp, Inc.*,
  No. 07-cv-61542 (S.D. Fla. 2010), *aff'd*, 688 F. 3d 713 (11th Cir. 2012) ................. 12

*In re Biolase, Inc. Sec. Litig.*,
  No. SAC 13-1300-JLS, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)...................... 7

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).................................................................................................. 2

*In re Coordinated Pretrial Proceedings In Petroleum Prods. Antitrust
  Litig.*,
  109 F.3d 602 (9th Cir. 1997) .................................................................................. 14

*In re CV Therapeutics, Inc. Sec. Litig.*,
  No. C 03-3709 SI, 2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) .............................. 14

*Destefano v. Zynga, Inc.*,
  No. 12-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .................. 10, 11, 16

*In re Equity Funding Corp. Sec. Litig.*,
  438 F. Supp. 1303 (C.D. Cal. 1977) ........................................................................ 11

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
  No. 13-cv-5693, 2017 WL 4685536 (C.D. Cal. May 8, 2017)............................. 5, 14

*Galeener v. Source Refrigeration & HVAC, Inc.*,
  No. 13-cv-04960-VC, 2015 WL 12977077 (N.D. Cal. Aug. 21, 2015) ....................... 5

LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 2:15-CV-01398-SRB

iii

*Glickenhaus & Co. v. Household Int'l Inc,*
  787 F.3d 408 (7th Cir. 2015) ......................................................... 12

*In re Heritage Bond Litig.,*
  No. 02-ML-1475-DT (RCX), 2005 WL 1594403 (C.D. Cal. June 10,
  2005) ............................................................................................ *passim*

*Hicks v. Stanley,*
  No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................. 17

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund. v. Int'l Game Tech., Inc.,*
  No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19,
  2012) ............................................................................................... 7

*Janus Capital Grp., Inc. v. First Derivative Traders,*
  131 S.Ct. 2296 (2011) ................................................................... 13

*In re Korean Air Lines Co., Antitrust Litig.,*
  No. 07-05107, 2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) .................... 3

*Morris v. Lifescan Inc.,*
  54 F. App'x. 663 (9th Cir. 2003) ...................................................... 5

*In re NCAA Grant-in-Aid Cap Antitrust Litig.,*
  768 F. App'x. 651 (9th Cir. 2019) .................................................... 3

*In re Omnivision Tech., Inc.,*
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................... 3, 6, 7, 11

*Ontiveros v. Zamora,*
  303 F.R.D. 356 (E.D. Cal. 2014) ..................................................... 16

*In re Optical Disk Drive Prods. Antitrust Litig. Indirect Purchaser Class,*
  959 F.3d 922 (9th Cir. 2020) .......................................................... 5

*In re Oracle Corp. Sec. Litig.,*
  No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd,*
  627 F.3d 376 (9th Cir. 2010) .......................................................... 12

*In re Rite Aid Corp. Sec. Litig.,*
  396 F.3d 294 (3d Cir. 2005) ............................................................ 3

*Robbins v. Koger Props., Inc.,*
  116 F.3d 1441 (11th Cir. 1997) ...................................................... 12

*Stanger v. China Elec. Motor, Inc.,*
  812 F.3d 734 (9th Cir. 2016) ........................................................... 3

Lead Counsel's  Motion for An Award of Attorneys' Fees and Payment of
Expenses and Memorandum of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB

iv

*Steiner v. Am. Broad. Co.*,
    248 F. App'x. 780 (9th Cir. 2007) ............................................................ 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................. 3

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977) ................................................................... 3

*Vinh Nguyen v. Radient Pharm. Corp.*,
    No. 11-00406, 2014 WL 1802293 (C.D. Cal. May 6, 2014)........................ 4

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .......................................................... *passim*

*Wood v. Ionatron, Inc.*,
    No. CV 06-354-TUC-CKJ, 2009 WL 10673479 (D. Ariz. Sept. 28,
    2009) ................................................................................................... 13

**Docketed Cases**

*In re Amerco Sec. Litig.*,
    No. Civ-04-2182, slip op. (D. Ariz. Nov. 2, 2006)..................................... 13

*In re Broadcom Corp. Class Action Litig.*,
    No. CV-06-5036-R, slip op. (C.D. Cal. Dec. 4, 2012) ............................... 17

*Drew, et al., v. Pultegroup, Inc., et al.*,
    No. CV 10-2204-PHX-SRB, slip op. (D. Ariz. May 21, 2012).................... 13

*Hatamian v. Advanced Micro Devices, Inc.*,
    Case No. 14-cv-00226-YGR, slip op. (N.D. Cal. Mar. 2, 2018) ................. 17

*In re Intuitive Surgical Sec. Litig.*,
    Case No. 5:13-cv-01920, slip op. (N.D. Cal. Dec. 20, 2018)..................... 17

**Statutes**

15 U.S.C. 78u-4(A)(4)........................................................................... 1, 2, 16

15 U.S.C. §78u-4(a)(6)............................................................................... 3

**Other Authorities**

Charles Silver, *Due Process and the Lodestar Method: You Can't Get
    There from Here*, 74 Tul. L. Rev. 1809, 1819-20 (June 2000)..................... 4

Lead Counsel's Motion for An Award of Attorneys' Fees and Payment of
Expenses and Memorandum of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB

v

## MOTION

PLEASE TAKE NOTICE THAT on July 21, 2020 at 10:00 am, Bernstein Liebhard LLP and Labaton Sucharow LLP (together "Lead Counsel"), on behalf of themselves and Liaison Counsel (collectively, "Plaintiffs' Counsel"), will move this Court for an Order: (i) awarding attorneys' fees of 30% of the Settlement Fund; (ii) approving payment of litigation expenses in the amount of $265,124.33; and (iii) approving Lead Plaintiffs' request for reimbursement related to their representation of the Settlement Class, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4), in the aggregate amount of $4,320.00.

This motion is based upon the following Memorandum of Points and Authorities; the Joint Declaration of Carol C. Villegas and Michael S. Bigin in Support of (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses (the "Joint Declaration" or "Joint Decl."), dated June 16, 2020, with annexed exhibits; the Stipulation and Agreement of Settlement, dated as of March 27, 2020 ("Stipulation") (ECF No. 137-2); and all of the prior pleadings and papers in this Action.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Lead Counsel respectfully submit this memorandum of points and authorities in support of their application for: (i) an award of attorneys' fees of 30% of the Settlement

---

[1] All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation. All exhibits referenced herein are annexed to the Joint Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Joint Declaration and the second reference is to the exhibit designation within the exhibit itself.

The Court is referred to the Joint Declaration for a detailed description of the allegations and claims, the procedural history of the Action, the risks faced by the Settlement Class in pursuing litigation, and the efforts that led to a settlement, among other matters. All internal quotations and citations are omitted unless otherwise noted.

LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 2:15-cv-01398-SRB

1

1   Fund; (ii) payment of litigation expenses in the amount of $265,124.33; and (iii)

2   reimbursement in the amount of $4,320 to Lead Plaintiffs in connection with their

3   representation of the Settlement Class, pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(4).

4     Pursuant to the Settlement, LifeLock, Inc. ("LifeLock" or the "Company") agreed

5   to pay $20,000,000 to the Settlement Class to end this securities litigation against

6   LifeLock, Todd Davis, Chris Power, and Hilary Schneider and to obtain a release of

7   related claims.  This recovery is a very favorable result for the Settlement Class and

8   avoids the substantial risks and expenses of continued litigation, including the risk of

9   recovering less, or nothing at all.  Plaintiffs' Counsel have not received any compensation

10  for their prosecution of the case, which required nearly five years of vigorous advocacy

11  and an appeal to the U.S. Court of Appeals for the Ninth Circuit.

12    As discussed herein, as well as in the Joint Declaration, it is respectfully submitted

13  that the requested fee would be fair and reasonable and appropriate under the particular

14  circumstances of this case.  The litigation expenses requested are reasonable in amount

15  and were necessarily incurred for the successful prosecution of the Action.  Finally, the

16  Lead Plaintiffs' PSLRA reimbursement requests are justified given their active

17  participation in the litigation.

18             **ARGUMENT**

19  **I. AWARDING ATTORNEYS' FEES CALCULATED AS A**
    **REASONABLE PERCENTAGE OF THE COMMON FUND**
20  **RECOVERED IS APPROPRIATE**

21    **A. Counsel Are Entitled to an Award of Attorneys' Fees**
    **from the Common Fund**
22

23    The Supreme Court has long recognized that "a litigant or a lawyer who recovers a

    common fund for the benefit of persons other than himself or his client is entitled to a

24  reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S.

25  472, 478 (1980).  Similarly, the Ninth Circuit has held that "a private plaintiff, or his

26  attorney, whose efforts create, discover, increase or preserve a fund to which others also

27  have a claim is entitled to recover from the fund the costs of his litigation, including

28

Lead Counsel's Motion for An Award of Attorneys' Fees and Payment of
Expenses and Memorandum of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB            2

attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *accord, In re NCAA Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x. 651, 653 (9th Cir. 2019). Courts recognize that awards of fair attorneys' fees from a common fund are important to incentivizing attorneys to represent class clients, who might otherwise be denied access to counsel, particularly on a contingency basis. *See Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016). In securities class actions, an award of fair attorney fees serves the public interest, as private securities actions are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the U.S. Securities Exchange Commission ("SEC"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

**B.     A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases**

Although courts have discretion to employ either the percentage of recovery or lodestar method, "[t]he use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Korean Air Lines Co., Antitrust Litig.*, No. 07-05107, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013); *see also In re Amkor Tech., Inc. Sec. Litig.*, No. 07-00278, 2009 WL 10708030, at *1 (D. Ariz. Nov. 19, 2009) (percentage-of-recovery method most appropriate to award attorneys' fees in securities class action); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("use of the percentage method in common fund cases appears to be dominant"). Thus, the Ninth Circuit has consistently approved the use of the percentage method in common fund cases.[2]

---

[2] The PSLRA likewise contemplates that fees be awarded on a percentage basis, authorizing attorneys' fees and expenses to counsel that do not exceed "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294,

*( . . . continued)*

The rationale for compensating counsel in common fund cases on a percentage basis is sound.  First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery. *See Vinh Nguyen v. Radient Pharm. Corp.*, No. 11-00406, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014).  Second, it more closely aligns "the lawyers' interests with achieving the highest award for the class members" in the shortest amount of time. *Id.*; *see also* Charles Silver, *Due Process and the Lodestar Method: You Can't Get There from Here*, 74 Tul. L. Rev. 1809, 1819-20 (June 2000) ("The consensus that the contingent percentage approach creates a closer harmony of interests between class counsel and absent plaintiffs than the lodestar method is strikingly broad.  It includes leading academics, researchers at the RAND Institute for Civil Justice, and many judges. . . . Indeed, it is difficult to find anyone who contends otherwise."); *cf. Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) ("[I]t is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case[….]").

## II.      ANALYSIS UNDER THE PERCENTAGE METHOD AND THE *VIZCAINO* FACTORS JUSTIFY A 30% CONTINGENCY FEE AWARD IN THIS CASE

In awarding an attorneys' fee from a common fund, the Court must determine whether the requested fee would be reasonable.  The Ninth Circuit has stated that a 25% fee is the benchmark attorneys' fee for class actions, which may be adjusted up or down depending on the circumstances of each case.  *Vizcaino,* 290 F.3d at 1048.  The reasonableness of a 30% fee here is strongly supported by the relevant factors considered by courts within the Ninth Circuit including: (1) the very favorable result for the class achieved by Lead Counsel; (2) the risks faced when litigating the twice-dismissed claims over nearly five years, and pursuing the appeal to the Ninth Circuit; (3) comparable fee

---

*(continued . . . )*
300 (3d Cir. 2005) ("[T]he percentage-of-recovery method was incorporated in the [PSLRA].").

Lead Counsel's Motion for An Award of Attorneys' Fees and Payment of
Expenses and Memorandum of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB                                                                              4

awards made in similar cases; (4) the burdens experienced by Lead Counsel; (5) the contingent nature of the fee; (6) a lodestar crosscheck; and (7) the reaction of the class. *See, e.g., In re Optical Disk Drive Prods. Antitrust Litig. Indirect Purchaser Class*, 959 F.3d 922, 930 (9th Cir. 2020) (following *Vizcaino*, 290 F.3d at 1052 and reiterating the factors to be considered). Moreover, Lead Plaintiffs were actively involved throughout the litigation and believe that the Fee and Expense Application is reasonable. *See* Ex. 1 at ¶6; Ex. 2 at ¶6.

As discussed below, here, an upward adjustment to a 30% fee would be reasonable given, in particular, the significant risks and burdens faced, and overcome, by counsel during the course of the litigation and the substantial amount of effort required by counsel. *See, e.g., In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) (awarding a fee of 33.3% of the settlement and noting that an "upward departure from the 25% benchmark figure is warranted" following an exceptional result and seven years of litigation). In particular, "[t]he 'benchmark' percentage should be adjusted … when special circumstances indicate that the percentage recovery would be either too small or large in light of the hours devoted to the case or other relevant factors." *In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCX), 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005) (awarding 33⅓% fee given exceptional 36% recovery for the class; counsel's effort, experience and skill during three years of contentious litigation; quality of opposition; complexity of securities issues; and contingency risk).[3]

---

[3] Similarly, in *Galeener v. Source Refrigeration & HVAC, Inc.*, No. 13-cv-04960-VC, 2015 WL 12977077, at * 1 (N.D. Cal. Aug. 21, 2015), the court awarded 30% of a $10 million wage and hour settlement, explaining that the award was "based on attorneys' fees awards issued in similar wage and hour cases in this District, and the fact that the common fund of $10,000,000 was created for Class Members through the efforts of Class Counsel." *See also Morris v. Lifescan Inc.*, 54 F. App'x. 663, 664 (9th Cir 2003) (affirming 33% fee where district court considered exceptional results, risk and complexity of case, and that settlement was solely the result of counsel's work.); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13-cv-5693, 2017 WL 4685536, at *6-10 (C.D.

*( . . . continued)*

For all the following reasons, it is respectfully submitted that the Court should award an attorneys' fee in this case of 30% of the Settlement Fund.

### A.  Lead Counsel Achieved a Very Favorable Result for the Settlement Class

As a gross recovery for the Settlement Class, $20 million is an excellent result. The $20 million Settlement Amount is approximately twice the median settlement value in 2019 for securities class actions and more than twice the median settlement amount from 2010 through 2019.  *See* Ex. 4, Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements – 2019 Review and Analysis, at 1 and 7 (Cornerstone Research 2020) (reporting a median settlement amount for all securities class action settlements of $11.5 million in 2019 and $8.5 million for Section 10(b) actions for the period from 2010-2019).

Moreover, the Settlement provides a very favorable recovery as a proportion of estimated damages, were the case to continue.  The Settlement recovers approximately 5% of the $416 million maximum estimated damages, and up to 10% of estimated damages when factoring in the real risk that Lead Plaintiffs would need to "disaggregate," or parse out, non-fraud related stock price movement and account for an October 29, 2015 stock price recovery.  *See* Joint Decl. at ¶¶98-99.  These percentages are above the recoveries generally in securities class actions.  For instance, Cornerstone Research has tracked the median proportion of Section 10(b) class action recoveries since

---

*(continued . . . )*
Cal. May 8, 2017) (awarding 30% fee of $73 million settlement based on results achieved, legal and procedural obstacles and complexities in the case, duration of three and a half year case, contingency risk, and reasonable multiplier); *Omnivision*, 559 F.Supp. 2d at 1046-1048 (awarding 28% of $13.75 million securities settlement based on substantial recovery of 9% of possible damages; risk of no recovery in continued litigation dealing with class certification, summary judgment on issues of loss causation and scienter, and uncertain trial outcome; skill needed to prosecute securities cases; contingent nature of case that had been litigated for over three years; awards of 30% in comparable cases).

Lead Counsel's Motion for An Award of Attorneys' Fees and Payment of Expenses and Memorandum of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB

6

2010. Cornerstone uses what it calls a "simplified tiered damages" approach for comparison purposes, *see* Ex. 4, Endnote 6, and the recovery here exceeds Cornerstone's estimated median recovery of 4.6%. *See* Ex. 4 at 7, Figure 6. Courts have also noted comparable or smaller percentages of recovery. *See, e.g., In re Biolase, Inc. Sec. Litig.,* No. SAC 13-1300-JLS (FFMx), 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (settlement at "8% of the maximum recoverable damages . . . equals or surpasses the recovery in many other securities class actions"); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund. v. Int'l Game Tech., Inc.,* No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (settlement at approximately "3.5% of the maximum damages . . . is within the median recovery in securities class actions settled in the last few years"); *Omnivision,* 559 F. Supp. 2d at 1046 (noting 9% recovery was more than triple average recovery in securities cases when approving upward adjustment to 28% fee).

However, even these favorable comparisons understate the value of the $20 million Settlement achieved. Here, Defendants had strong arguments that Lead Plaintiffs could not establish that *any* recoverable losses were caused by the two alleged corrective disclosures. Defendants would argue that the first corrective disclosure on February 10, 2015 merely announced that LifeLock was taking a reserve for a previously disclosed FTC investigation and this announcement contained no information—much less new information—regarding LifeLock's alerts. *See* Joint Decl. at ¶74. Defendants would also argue that the second alleged corrective disclosure on July 21, 2015, the FTC's announcement that it was initiating contempt proceedings against LifeLock, revealed only potential wrongdoing—there was no subsequent adjudication or admission confirming that any wrongdoing occurred. *Id.* at ¶75. Defendants would also likely argue that even if the FTC's allegations had been subsequently confirmed, those allegations could not support Lead Plaintiffs' loss causation theory because they did not tie to Lead Plaintiffs' claims. *Id.* Therefore, arguably, none of the alleged revelations caused any legal damages. Also, if Lead Plaintiffs were unable to develop an

Lead Counsel's Motion for An Award of Attorneys' Fees and Payment of Expenses and Memorandum of Points and Authorities In Support Thereof   Case No. 2:15-cv-01398-SRB

7

economically reasonable method for disaggregating loses related to the alerts statements, then they would be unable to prove an element of their claims and none of the class members could recover for their alleged damages.

The Settlement is also an excellent result because it provides the Settlement Class, whose claims have been pending since 2015, with a prompt and substantial tangible recovery, without the considerable risk, expense, and delay of litigating to completion. Though Lead Plaintiffs believe they could have succeeded in establishing each of the elements of the alleged claims, Defendants would likely have sought summary judgment and there was no guarantee that the proposed class would prevail in Defendants' continuous challenges and, even if they did, how the Court's rulings would affect damages or how the case would be viewed by the jury.  Additional discovery would have been protracted and a trial of the claims would inevitably be long and complex, and even a favorable verdict would undoubtedly spur a lengthy post-trial and appellate process.

### B.   Lead Counsel Successfully Navigated the Many Risks of this Case Over Nearly Five Years of Litigation Efforts

The risk of litigation is also an important factor in determining a fair fee award. *Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees).  Without rock solid facts, securities fraud class actions are extremely difficult to allege and prove.  A 30% fee here is warranted in light of Lead Counsel's work to overcome the many risks faced while litigating the Action.  Here, Lead Counsel amended the complaint twice and the claims were twice dismissed by the Court.  *See* Joint Decl. at ¶¶13-26.  Lead Counsel then appealed the second dismissal to the Ninth Circuit (*see id*. at ¶¶27-41), which, as reported in 2018 and the most recent report available, had a reversal rate in non-governmental civil cases of less than 13%.[4]

After convincing the Ninth Circuit to partially reverse the dismissal and remand the case back to the Court, Lead Plaintiffs faced more challenges as Defendants drilled

---

[4] *See* https://www.ca9.uscourts.gov/judicial_council/publications/AnnualReport 2018.pdf.

Lead Counsel's Motion for An Award of Attorneys' Fees and Payment of Expenses and Memorandum of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB

8

down into the economics of whether there was a sustainable loss causation theory given the remaining theories of liability and the tough facts presented in the case, or that, at least, no damages would be found by a preponderance of admissible evidence.  *See* Joint Decl. at ¶¶73-83.

There were also the challenges of proving falsity and scienter.  Regarding falsity, Defendants would have argued, among other things, that LifeLock's statements regarding near-real time alerts were not false or misleading because LifeLock never stated that *all* of its alerts were near real-time or actionable.  To the contrary, Defendants would argue that LifeLock repeatedly and plainly warned investors that alerts were subject to significant limitations that may result in LifeLock's customers not receiving alerts in near real time.  Likewise, Defendants warned investors that all alerts were subject to delays as a result of technical issues experienced by third-party vendors or by LifeLock itself.  Even the underlying real-time alert flaws may not have occurred in a material amount when the Settlement Class purchased LifeLock shares, as the FTC did not clearly find wrongdoing by the Company during the Class Period.  *See* Joint Decl. at ¶¶66-70.

With respect to scienter, witness memories had likely faded over the last five years and Defendants certainly never believed they had engaged in intentional securities fraud and they continue to deny the Complaint's allegations.  Indeed, Defendants would have argued that in light of the fact that LifeLock believed it had adequately warned the market that the various alerts the Company provided came with obvious and disclosed limitations, Defendants lacked any intent to defraud and did not act with severe recklessness.  Defendants would also be able to demonstrate that the Individual Defendants did not engage in significant insider sales during the Class Period.  *See* Joint Decl. at ¶¶71-72.

Thus, the risks navigated by Lead Counsel support the requested fee.

**C.    The Skill Required and Quality of Work Support the Requested Fee**

Courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities."  *Heritage Bond*, 2005 WL

Lead Counsel's  Motion for An Award of Attorneys' Fees and Payment of
Expenses and Memorandum of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB

9

1594389, at *12; *see also Vizcaino*, 290 F.3d at 1048.  "This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Destefano v. Zynga, Inc.*, No. 12-04007-JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) (quoting *Omnivision*, 559 F. Supp. 2d at 1047).

Here, in addition to the complexities of this being a securities case, the claims centered on Defendants' alleged false and misleading statements and omissions concerning the functionality of LifeLock's products.  Lead Counsel worked very hard to investigate and develop the complex claims against Defendants.  Lead Counsel conducted their own investigation, meeting with and interviewing former employees who potentially had information concerning the alleged fraud and consulting with a former associate director of the FTC Division of Privacy and Identity Theft Protection.  *See* Joint Decl. at ¶¶13, 21.  Lead Counsel also scoured the public record for information to support the claims, including requesting information from the FTC pursuant to a Freedom of Information Act request.  *Id*.  This research allowed Lead Counsel to prepare two detailed amended complaints.  Defendants did not answer either complaint and the Parties briefed and argued two motions to dismiss.  *Id*. at ¶¶15-17, 22-23.

After losing the second motion to dismiss, the Court entered judgment in favor of Defendants.  Lead Counsel made the strategic decision to file a focused appeal targeting certain allegations of the Complaint.  In addition to whether certain statements were actionable, Lead Counsel briefed the unsettled issue of whether double (arguably triple) hearsay could be relied on to show scienter at the pleading stage.  Lead Counsel briefed and argued the appeal, ultimately convincing the Ninth Circuit to partially reverse the dismissal and remand the Action for further proceedings.  *Id*. at ¶¶27-41.

Thereafter, the Parties engaged in accelerated discovery, using their expertise to negotiate mutually agreeable search parameters and to expeditiously produce responsive documents.  *Id*. at ¶¶44-52.  In total, Lead Counsel reviewed and produced approximately 14,671 pages of documents on behalf of the Lead Plaintiffs.  *Id*. at ¶¶45, 52.  Lead

LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 2:15-CV-01398-SRB

10

Counsel also reviewed Defendants' productions of approximately 62,385 documents. *Id.* at ¶¶45-51. Lead Counsel and Defendants deposed a witness who previously provided information used in the Complaint. *Id.* at ¶¶45, 53. Lead Counsel also evaluated the strengths and weaknesses of the loss causation theories in the case with a consulting expert economist. *Id.* at ¶4.

Lead Counsel have extensive and significant experience in the highly specialized field of securities class action litigation and are known as leaders in the field. *Id.* at ¶¶116-18. Lead Counsel have not only used their knowledge and skill from prior cases but also developed specific expertise in the issues presented here to overcome the obstacles presented by Defendants. The favorable Settlement is attributable in large part to the diligence, determination, hard work, and skill of Lead Counsel, who developed, litigated, and successfully settled the Action.

The quality of opposing counsel is also important in evaluating the quality of the work done by Lead Counsel. *See, e.g., Heritage Bond*, 2005 WL 1594389, at *12; *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977). Lead Counsel were opposed in this Action by very skilled and highly respected lawyers with well-deserved reputations for vigorous advocacy in the defense of complex civil cases such as this. In the face of this formidable opposition, Lead Counsel were able to develop Lead Plaintiffs' case so as to persuade Defendants to settle the Action on terms favorable to the Settlement Class.

**D.     The Contingent Nature of the Case and the High Financial Burden Carried by Lead Counsel**

It has long been recognized that attorneys are entitled to a larger fee when their compensation is contingent in nature. *See Vizcaino*, 290 F.3d at 1048-50; *Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."); *see also Zynga*, 2016 WL 537946, at *18 (noting

Lead Counsel's Motion for An Award of Attorneys' Fees and Payment of
Expenses and Memorandum of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB

11

1   that "when counsel takes on a contingency fee case and the litigation is protracted, the

2   risk of non-payment after years of litigation justifies a significant fee award").

3        Indeed, there have been many class actions in which plaintiffs' counsel took on the

4   risk of pursuing claims on a contingency basis, expended thousands of hours and dollars,

5   yet received no remuneration whatsoever despite their diligence and expertise.   For

6   example, Lead Counsel Labaton Sucharow tried *In re JDS Uniphase Securities*

7   *Litigation*, Case No. C-02-1486 CW (EDL) (N.D. Cal. Nov. 27, 2007), through to a

8   disappointing verdict for the defendants, receiving no compensation and expending

9   millions of dollars in time and expenses.  *See also In re Oracle Corp. Sec. Litig.*, No. C

10  01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), aff'd, 627 F.3d 376 (9th Cir.

11  2010) (granting summary judgment to defendants after eight years of litigation, and after

12  plaintiff's counsel worked over 100,000 hours, representing a lodestar of approximately

13  $48 million, and incurred over $6 million in expenses).

14       Lead Counsel are aware of many other hard-fought lawsuits where, because of the

15  discovery of facts unknown when the case was commenced, changes in the law during

16  the pendency of the case, or a decision of a judge or jury following a trial on the merits,

17  excellent professional efforts by members of the plaintiff's bar produced no fee for

18  counsel.  *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997)

19  (reversing $81 million jury verdict and dismissing case with prejudice); *Anixter v. Home-*

20  *Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained

21  after two decades of litigation).  Even plaintiffs who get past summary judgment and

22  succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial

23  motion.  *See, e.g., In re BankAtlantic Bancorp, Inc.*, No. 07-cv-61542 (S.D. Fla. 2010) (in

24  case tried by Labaton Sucharow, after plaintiffs' jury verdict, court granted defendants'

25  motion for judgment as a matter of law on loss causation grounds), *aff'd*, 688 F. 3d 713

26  (11th Cir. 2012) (trial court erred, but defendants entitled to judgment as matter of law on

27  lack of loss causation); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th

28  Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of

Lead Counsel's Motion for An Award of Attorneys' Fees and Payment of
Expenses and Memorandum of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB                                                                  12

litigation on loss causation grounds and error in jury instruction under *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S.Ct. 2296 (2011)).

Here, because Plaintiffs' Counsel's fee was entirely contingent, the only certainty was that there would be no fee without a successful result and that such result would only be realized after significant amounts of time, effort, and expense had been expended. Unlike counsel for Defendants, who were paid and reimbursed for their expenses on a current basis, Plaintiffs' Counsel have received no compensation for their efforts during the course of the Action.  Plaintiffs' Counsel have risked non-payment of $5,862,657.00 in time worked on this matter and $265,124.33 in expenses, knowing that if their efforts were not successful, no fees or expenses would be paid.

**E.      A 30% Fee Award Is Comparable to Awards in Similar Cases**

Although the requested fee is higher than the 25% benchmark, fee awards of 30%, or more, have regularly been awarded in class actions in district courts within Arizona and throughout the Ninth Circuit.

For instance, in *Wood v. Ionatron, Inc.*, No. CV 06-354-TUC-CKJ, 2009 WL 10673479, at *5 (D. Ariz. Sept. 28, 2009), the court awarded a fee of 30% of the $6.5 million settlement, finding it "well within the range routinely approved in such cases."  In *In re Audioeye, Inc., Sec. Litig.*, No. CV-15-00163-TUC-DCB, 2017 WL 5514690, at *4 (D. Ariz. May 8, 2017), the court awarded a fee of 33 1/3% of a $1,525,000 securities settlement.  And, in *In re Amerco Sec. Litig.*, No. Civ-04-2182, slip op. at 1 (D. Ariz. Nov. 2, 2006), the court awarded 30% of a $7 million securities settlement fund.  *See* Ex. 10.[5]  This Court in *Drew, et al., v. Pultegroup, Inc., et al.*, No. CV 10-2204-PHX-SRB, slip op.at 3 (D. Ariz. May 21, 2012) (Ex. 10), also awarded a 30% fee in connection with a $2.5 million settlement, in light of the risks in the case, the lengthy litigation, and significant discovery.

---

[5] All unreported "slip" opinions are submitted in a compendium, attached as Exhibit 10 to the Joint Declaration.

Lead Counsel's  Motion for An Award of Attorneys' Fees and Payment of
Expenses and Memorandum of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB

13

Courts elsewhere within the Ninth Circuit also regularly award fees of 30% or more in connection with comparable settlements. *See, e.g., Heritage Bond*, 2005 WL 1594403, at *18 (awarding 33.33% fee of $27,783,000 settlement); *In re CV Therapeutics, Inc. Sec. Litig.*, No. C 03-3709 SI, 2007 WL 1033478, at *1 (N.D. Cal. Apr. 4, 2007) (awarding 30% fee of $13.5 million settlement); *Flo & Eddie Inc. v. Sirius XM Inc. Radio*, CV13–5693 PSG (GJSx), 2017 WL 4685536, at *7 (C.D. Cal. May 8, 2017) (awarding 30% fee in $35 million settlement).

Accordingly, it is respectfully submitted that a 30% fee is comparable to awards in similar cases.

## F.     The Requested Fee Is Reasonable Under a Lodestar Cross-Check Analysis

Although an analysis of counsel's lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with Plaintiffs' Counsel's lodestar demonstrates its reasonableness. *See Vizcaino*, 290 F.3d at 1048-50; *see also In re Coordinated Pretrial Proceedings In Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) (comparing the lodestar fee to the percentage fee is an appropriate measure of a percentage fee's reasonableness).

Plaintiffs' Counsel's combined "lodestar" is $5,862,657.00 for 8,730.10 hours of work through May 31, 2020.  The requested 30% fee, if awarded, would represent a "multiplier" of just 1.02, meaning Plaintiffs' Counsel are essentially only seeking their lodestar. *See* Exs. 5-A, 6-A, 7-A, and 8.  The Ninth Circuit has recognized that attorneys in common fund cases are frequently awarded a multiple of their lodestar, rewarding them "for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino*, 290 F.3d at 1051.  For example, the district court in *Vizcaino* approved a fee that reflected a multiple of 3.65 times counsel's lodestar. *Id.*  The Ninth Circuit affirmed, holding that the district court correctly considered the range of multiples applied in common fund cases, and noting that a range of lodestar multiples from 1.0 to 4.0 are frequently awarded. *Id.*; *see also*

Lead Counsel's Motion for An Award of Attorneys' Fees and Payment of Expenses and Memorandum of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB

14

1     *Steiner v. Am. Broad. Co.*, 248 F. App'x. 780, 783 (9th Cir. 2007) (finding that 6.85

2     multiplier "falls well within the range of multipliers that courts have allowed").

3        Plaintiffs' Counsel's lodestar represents 8,730.10 hours of work at counsel's

4     current hourly rates.  Counsel's rates range from $725 to $1,150 per hour for partners,

5     $650 to $900 per hour for of counsel or senior counsel, and $335 to $650 per hour for

6     associates and staff attorneys.  *See* Exs. 5-A, 6-A, and 7-A.  Lead Counsel submit that

7     these rates are comparable, or less than, those used by peer defense-side law firms

8     litigating matters of similar magnitude.  Sample defense firm rates in 2019, gathered by

9     Labaton Sucharow from bankruptcy court filings nationwide, often exceeded these rates.

10    *See* Ex. 9; Joint Decl. at ¶114.

11       Additional work will be required of Lead Counsel on an ongoing basis, including:

12    correspondence with Settlement Class Members; supervising the claims administration

13    process being conducted by the Claims Administrator; and supervising the distribution of

14    the Net Settlement Fund to Settlement Class Members who have submitted valid Claim

15    Forms.  However, Lead Counsel will not seek payment for this additional work.

16    **G.**     **The Settlement Class's Reaction to Date Supports the Fee Request**

17       Although not articulated specifically in *Vizcaino*, district courts in the Ninth

18    Circuit also consider the reaction of the class when deciding whether to award the

19    requested fee.  *See Heritage Bond*, 2005 WL 1594389, at *15 ("The presence or absence

20    of objections . . . is also a factor in determining the proper fee award.").  A total of 44,954

21    copies of the Notice and Claim Form have been sent to potential Settlement Class

22    Members and the Court-approved Summary Notice was published in *Investor's Business*

23    *Daily* and transmitted over the internet using *PR Newswire*.  Ex. 3 at ¶¶13-14.  In

24    addition, the Stipulation and Notice, among other documents, were posted to a website

25    dedicated to the Settlement and Lead Counsel's websites.  Ex. 3 at ¶16; Joint Decl. at

26    ¶61.  Although the objection deadline will not run until June 30, 2020, to date, no

27

28

Lead Counsel's Motion for An Award of Attorneys' Fees and Payment of
Expenses and Memorandum of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB

15

1   objections to the requested amount of attorneys' fees and expenses have been received.[6]

2   **III.   PLAINTIFFS' COUNSELS' EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED**

3

4        "There is no doubt that an attorney who has created a common fund for the benefit

5   of the class is entitled to reimbursement of reasonable litigation expenses from that fund."

6   *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014).   "To that end, courts

7   throughout the Ninth Circuit regularly award litigation costs and expenses – including

8   photocopying, printing, postage, court costs, research on online databases, experts and

9   consultants, and reasonable travel expenses in securities class actions, as attorneys

10  routinely bill private clients for such expenses in non-contingent litigation." *Zynga,* 2016

11  WL 537946, at *22 (citing *Harris v. Marhoefer*, 24 F.3d 16, 1920 (9th Cir. 1994).

12       Here, Plaintiffs' Counsel incurred reasonable and necessary costs and expenses in

13  the total amount of $265,124.33, which are detailed in Plaintiffs' Counsel's individual

14  firm declarations, Exs. 5-B & C, 6-B, and 7-B, and the Joint Declaration ¶¶119-26.

15  Because the expenses were incurred with no guarantee of recovery, Lead Counsel had a

16  strong incentive to keep them as low as reasonably possible.   Indeed, total expenses of

17  $265,124.33 is significantly less than the $350,000 estimate contained in the Notice.  *See*

18  Ex. 3-A at ¶¶5, 40.  Although the objection deadline will not run until June 30, 2020, to

19  date no objections to the maximum requested amount of expenses have been received.

20  **IV.   LEAD PLAINTIFFS' REQUEST FOR AWARDS PURSUANT TO 15 U.S.C. 78U-4(A)(4) ARE REASONABLE**

21       The PSLRA, 15 U.S.C. § 78u-4(a)(4), provides for an "award of reasonable costs

22  and expenses (including lost wages) directly relating to the representation of the class to

23  any representative party serving on behalf of a class."   Here, as detailed in Lead

24  Plaintiffs' declarations, attached as Exhibits 1 and 2 to the Joint Declaration, Lead

25  Plaintiffs are seeking a total of $4,320 in expenses related to the time they dedicated to

26

27       [6] Lead Counsel will address any future objections in their reply papers, which will be

28  filed with the Court on or before July 14, 2020.

Lead Counsel's Motion for An Award of Attorneys' Fees and Payment of
Expenses and Memorandum of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB

16

1  the Action, which included communicating with Lead Counsel, reviewing pleadings and

2  briefing, producing documents, and participating in the mediation.

3        Many cases have approved reasonable payments to compensate class

4  representatives for the time, effort, and expenses devoted by them on behalf of a class.

5  *See, e.g., In re Intuitive Surgical Securities Litigation,* Case No. 5:13-cv-01920, slip op.

6  at 4 (N.D. Cal. Dec. 20, 2018) (awarding $49,754.18 and $9,100.00 to class

7  representatives) (Ex. 10); *Hatamian v. Advanced Micro Devices, Inc.*, Case No. 14-cv-

8  00226-YGR, slip op, at 4 (N.D. Cal. Mar. 2, 2018) (awarding costs and expenses to two

9  class representatives in the amount of $8,348.25 and $14,875.00) (Ex. 10); and *In re

10  Broadcom Corp. Class Action Litig.*, No. CV-06-5036-R (CWx) (C.D. Cal. Dec. 4,

11  2012), slip op. at 2 (awarding costs and expenses to class representative in the amount of

12  $21,087) (Ex. 10).  As explained in one decision, courts "award such costs and expenses

13  to both reimburse named plaintiffs for expenses incurred through their involvement with

14  the action and lost wages, as well as provide an incentive for such plaintiffs to remain

15  involved in the litigation and incur such expenses in the first place." *Hicks v. Stanley*,

16  No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005).

17        Lead Counsel respectfully submit that the amounts sought here are reasonable

18  based on Lead Plaintiffs' active involvement in the Action from inception to settlement.

19                                    **<u>CONCLUSION</u>**

20        For all the foregoing reasons, Lead Counsel respectfully request that the Court

21  award attorneys' fees of 30% of the Settlement Fund, litigation expenses in the amount of

22  $265,124.33, and PSLRA reimbursement to Lead Plaintiffs Oklahoma Police Pension

23  and Retirement System in the amount of $1,320 and Oklahoma Firefighters Pension and

24  Retirement System in the amount of $3,000.  A proposed order will be submitted with

25  Lead Counsel's reply papers, after the June 30, 2020 objection deadline has passed.

26

27

28

Dated:  June 16, 2020

**LABATON SUCHAROW LLP**

*/s/ Carol C. Villegas*
CAROL C. VILLEGAS (*pro hac vice*)
MARISA N. DEMATO (*pro hac vice*)
JAMES T. CHRISTIE (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone:  (212) 907-0700
Facsimile:   (212) 818-0477

cvillegas@labaton.com
ndemato@labaton.com
jchristie@labaton.com

**BERNSTEIN LIEBHARD LLP**
STANLEY D. BERNSTEIN (*pro hac vice*)
MICHAEL S. BIGIN (*pro hac vice*)
JOSEPH R. SEIDMAN, JR. (*pro hac vice*)
10 East 40th Street
New York, NY 10016
Telephone:  (212) 779-1414
Facsimile:   (212) 779-3218

bernstein@bernlieb.com
bigin@bernlieb.com
seidman@bernlieb.com

*Lead Counsel for Lead Plaintiffs and the Class*

Lead Counsel's Motion for An Award of Attorneys' Fees and Payment of
Expenses and Memorandum of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB

18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, Carol C. Villegas, hereby certify that a true copy of the foregoing document filed through the ECF system on June 16, 2020, will be electronically sent to the registered participants as identified on the Notice of Electronic Filing, and paper copies will also be sent to those indicated as non-registered participants.

*/s/ Carol C. Villegas*
CAROL C. VILLEGAS

Lead Counsel's Motion for An Award of Attorneys' Fees and Payment of
Expenses and Memorandum of Points and Authorities In Support Thereof
Case No. 2:15-cv-01398-SRB

19